IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PETER BARBARA and JOHN DREW, | § § § § |
| *Plaintiffs,* | § § |
| v. | §   CIVIL ACTION NO.: 4:22-CV-03340 § |
| MCGRIFF INSURANCE SERVICES, INC., | § § § |
| *Defendant.* | § § |

## DEFENDANT'S PROPOSED PRETRIAL ORDER

Defendant McGriff Insurance Services, LLC (f/k/a McGriff Insurance Services, Inc.) ("McGriff") file its Proposed Pretrial Order and states as follows:

## PREFACE

The Court's Scheduling Order requires the parties are to file the Joint Pretrial Order on December 27, 2023. [Doc. No. 9, Para 8.] In anticipation of that filing, counsel for McGriff contacted counsel for Plaintiff John Drew ("Drew") regarding the December 27 Joint Pretrial Order submission deadline to arrange a time to discuss proposed stipulations and the like. Counsel for Drew was traveling with family and advised that he had mis-calendared the due date for this pleading for December 28th. Counsel for the Parties agreed that McGriff would file its own proposed Pretrial Order on December 27th, to comply with this filing deadline. However, counsel also agreed to speak on December 28th to discuss those topics on which the Court requires the parties to confer, such as stipulated facts and agreed proposals of law and the like. Therefore, McGriff is submitting this version of the Pretrial Order to meet the Court's deadline. Counsel Drew plans to submit his version of this pleading on December 28, 2023, but before doing so, counsel

plans to speak and confer, so that when Drew files his proposed pretrial order, on December 28th, it should be able to include proposed stipulated and contested facts and proposed agreed and opposed questions of law, and the like. Further, and since the trial of this matter is not set until February 12, 2024, and McGriff's summary judgment motion is now fully briefed and ripe for consideration, if the Court prefers, counsel for the Parties can also submit a single, Joint Pretrial Order at a later date so that the Court need not review two proposed Pretrial Orders.

## DEFENDANT'S PROPOSALS

1. **Appearance of Counsel**

   **PLAINTIFF**

   **GRAY REED & McGRAW LLP**
   JAY ALDIS
   Texas State Bar No. 00785656
   1300 Post Oak Blvd., Ste. 2000
   Houston, TX 77056
   Telephone: (713) 986-7175
   Fax: (713) 986-7100
   jaldis@grayreed.com
   **ATTORNEYS FOR PLAINTIFF JOHN DREW**

   **DEFENDANT**

   **OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.**
   GARY D. EISENSTAT
   Texas State Bar No. 06503200
   gary.eisenstat@ogletree.com
   JOHN M. BARCUS
   Texas State Bar No. 24036185
   john.barcus@ogletree.com
   Preston Commons West
   8117 Preston Road, Suite 500
   Dallas, Texas  75225
   (214) 987 3800
   (214) 987 3927 (Fax)
   **ATTORNEYS FOR DEFENDANT
   MCGRIFF INSURANCE SERVICES, LLC**

2. **Statement of the Case**

   In this employment dispute, Plaintiff John Drew ("Drew") has sued McGriff Insurance Services, LLC ("McGriff") for age discrimination under both the Age Discrimination in Employment Act of 1967 ("ADEA") and the Texas Labor Code based upon its 2008 decision not to award Drew a discretionary forgivable loan as part of a producer compensation program that McGriff rolled out in 2008.

3. **Jurisdiction**:

This Court has jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1332, and under 29 U.S.C. § 1367. No party contests this Court's jurisdiction.

4. **Motions Pending:**

   a. McGriff's Motion for Leave to File Amended Answer (doc. 13; filed July 6, 2023)

   b. McGriff's Motion for Summary Judgment and Brief in Support (doc. 29; filed November 14, 2023)

5. **Contention of the Parties**

   **PLAINTIFF**

   [to be provided]

   **DEFENDANT**

   McGriff denies that it discriminated against Drew based upon his age (or otherwise) in violation of the ADEA or the Texas Labor Code when it declined to award him a discretionary forgivable loan as part of and under a compensation program that McGriff announced in February 2008.

   Drew joined McGriff in 2002. He was then 60 years old. At the time of hire, Drew negotiated a very lucrative compensation package that far exceeded the normal amounts McGriff paid to other Producers. This was one of the reasons McGriff declined to award Drew a discretionary forgivable loan, and had nothing to do with his age.

   Drew's annual salary was also far higher than similarly-situated Producers because typically, when more than one Producer services an account, McGriff allocates dollar credits for that work between or among the participating Producers, such that the percentage amounts of the allocation totals 100%. However, beginning in 2005—and continuing to this day—although other Producers work on accounts that Drew may have originated, he still receives full credit (*i.e.,* 100%) on each such account. Drew's salary is then calculated based upon this full (100%) allocation. As a result, from 2005 to the present, McGriff has paid Drew an additional $1.4 million in salary, above what his salary would have otherwise been without this 100% allocation. No other Producer has such an arrangement, and Drew would never have been eligible for and received *both* a forgivable loan, and this full credit resulting in his enhanced salary. The amounts Drew would have received if he had received only a forgivable loan would have been far less than the $1.4 million that McGriff has paid to Drew from 2005 to present. Drew's special compensation arrangement regarding co-sold/managed accounts, which had been in place for several years as of 2008, was an additional reason McGriff declined to also award Drew a

discretionary forgivable loan based upon the size of his book of business, and was unrelated to his age.

McGriff announced the discretionary forgivable loan program in 2008, as part of a larger enhanced compensation program. Drew was clearly aware of this larger program, specifically including the forgivable loan program in 2008, as he used it to recruit and retain other Producers when he headed McGriff's Dallas office. Drew also knew *in* 2008 that he had not been selected him to receive a forgivable loan me, and had complained about that fact to his superiors starting in 2008 and each year after for the next several years. Drew also obviously knew his own age. And yet, Drew waited and did not file a charge of discrimination until 2021, some fifteen years later. Drew's charge and suit are therefore both untimely and his claims are barred as a result for this additional reason.

Finally, the Ledbetter amendment to the ADEA does not save Drew's age discrimination claims from being untimely. At most, even if Drew's charge were timely filed based on the Ledbetter amendment, he suffered no actionable *damages* during the charge-filing period, *i.e.*, 180 days prior to the date he filed the charge, because all of his damages accrued, if at all, in 2008. The Texas Labor Code does not incorporate the Ledbetter amendment to the ADEA, whether expressly or by incorporation, and his state law claims are not "saved" from being untimely.

6.  **Admissions of Fact**

    **[Defendant's Proposals, Subject to Conference as Discussed in Preface]**

    a. Drew joined McGriff in 2002 as a Producer.

    b. Drew was 60 years old at the time.

    c. For seven years, Drew headed McGriff's Dallas office.

    d. In 2008, McGriff formally announced a new compensation program for Producers.

    e. The compensation Program included a discretionary forgivable loan component under which, if a Producer's "book" of business reached a minimum amount of $1,000,000, the Producer was eligible to receive a discretionary forgivable loan of $200,000, and if a Producer's book of business then grew by another $500,000, the Producer was eligible for an additional forgivable loan of $100,000.

    f. The forgivable loan component of the Program was entirely discretionary, and neither Drew nor any other Producer had an entitlement to a loan simply by virtue of the size of the Producer's "book."

    g. McGriff did not select Drew to participate in the forgivable loan program when it was announced in 2008, and each year thereafter.

h. In 2016, McGriff made Drew a $50,000 forgivable loan, repayable over five years, which amount was forgiven by 2021.

i. Aside from the $50,000 forgivable loan Drew received in 2016, he has not otherwise received any other forgivable loans, including under the Program.

j. Drew is currently employed by McGriff as a Producer.

k. Drew's current annual salary is approximately $425,000.

l. Drew's book of business, as calculated for the purposes of forgivable producer loans, has never exceeded $3 million.

m. No McGriff employee made any age animus statements or remarks to Drew about his age or that he was not selected to participate in the forgivable loan program because of his age.

n. Drew jointly filed his only charge of discrimination with the EEOC and the Texas Workforce Commission on September 14, 2021, regarding his non-participation in the forgivable loan program.

7.  **Contested Issues of Fact**

    **PLAINTIFF**

    [to be provided]

    **DEFENDANT**

    **[Defendant's Proposals, Subject to Conference as Discussed in Preface]**

    a. Whether Drew can prove by a preponderance of the evidence that, but for his age, McGriff would have selected Drew to participate in the forgivable loan program.

    b. Whether Drew can prove by a preponderance of the evidence that his age was a motivating factor in McGriff's decision regarding whether to select him to participate in the forgivable loan program.

    c. Whether Drew received compensation from McGriff above and beyond what it paid and pays to other Producers.

    d. Whether McGriff's decision not to award Drew a forgivable loan under the Program was based on the compensation package Drew negotiated at the outset of his employment in 2002.

    e. Whether McGriff's decision not to award Drew a forgivable loan under the Program was based on the unique compensation structure implemented in 2005 whereby he continued to receive 100% credit for new business on certain accounts despite the fact that other Producers (a) had begun working on those accounts and (b) despite Drew's 100% credit, each still received the credit they would have received in the ordinary course.

    f. Whether Drew was aware of the forgivable loan program in 2008.

    g. Whether in 2008, Drew was also aware of that McGriff had not selected him to receive a forgivable loan in 2008.

    h. Whether between 2008 and 2015, Drew complained regularly that he had not been selected to receive a forgivable loan.

    i. Whether Drew would have been eligible to receive a forgivable loan after 2008, based upon the size of his annual book of business.

    j. Whether Drew would have been eligible to receive a forgivable loan based upon the size of his book of business in addition to the other amounts that McGriff paid Drew, such as his enhanced annual salary.

    k. If Drew were eligible to receive a forgivable loan in 2008, whether he would have ever been eligible to receive any other forgivable loan amounts within 180 days of September 14, 2021.

    l. Whether Drew can identify any comparators who were treated more favorably, *i.e.* whether he can show that McGriff has paid another Producer the amounts that it paid to Drew in enhanced salary *and* given them forgivable loans under the Program.

    m. If Drew is able to prove that he is entitled to a forgivable loan, what would the loan amount be, if any, and loan terms be?

    n. Whether Drew timely filed a charge of discrimination.

    o. If his charge of discrimination was timely filed, whether Drew suffered any actionable damages during the period of time for filing the charge (*i.e.*, 180 days prior to filing).

    p. Whether Drew's claims are barred by his failure to timely exhaust his administrative remedies.

    q. Whether Drew's claims are barred by the applicable statute(s) of limitations.

    r. Whether Drew's claims are barred by the doctrines of laches, unclean hands, after-acquired evidence, waiver, and/or estoppel.

    s. To the extent any of the above are deemed to be contested issues of law, they are incorporated by reference as such.

**8.** **<u>Agreed Propositions of Law</u>**

**[Defendant's Proposals, Subject to Conference as Discussed in Preface]**

a. The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to "fail or refuse to hire or discharge any individual with respect to his compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a).

b. A plaintiff proceeding under the ADEA must prove that he was "within the protected class," i.e., age 40 or older; qualified for the position he held; suffered an adverse employment decision; and was treated less favorably than similarly situated younger employees." *Leal v. McHugh*, 731 F.3d 405, 410-411 (5th Cir. 2015).

c. To prevail on a cause of action for violation of 29 U.S.C. § 623(a)(1), "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action." *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

d. "The burden of persuasion does not shift to the employer to show that it would have taken the actions regardless of age, even where a plaintiff has produced some evidence that age was one motivating factor in that decision." *Gross*, 557 U.S. at 180.

e. The ADEA also provides that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed (A) within 180 days after the alleged unlawful practice occurred; or (B) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred[.]" 29 U.S.C. § 626(d)(1)(A)-(B).

f. Under the ADEA, "the Fifth Circuit has expressly rejected the notion that a Title VII discrimination claim – and its attendant pre-suit requirements period – begins to accrue when the plaintiff learns of discriminatory intent ,as opposed to the discriminatory act itself." *Li v. Univ. of Tex. Rio Grande Valley*, No. 7:15-CV-00534, 2018 WL 706472, at *5 (S.D. Tex. Feb. 2, 2018) (citing, *inter alia*, *Merrill v. Southern Meth. Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (limitations period begins to run when a plaintiff knows or reasonably should know that the discriminatory act has occurred, not when he or she first perceives that a discriminatory motive caused the act)). *See, e.g.*, *Foster v. United Rentals (North America), Inc.*, No. 2:16-CV-114, 2018 WL 1474186, at *3 (S.D. Tex. March 9, 2018) (applying same principle to ADEA claim).

g. ADEA claims "based on discrete acts cannot rely on a continuing violation theory." *Heath v. Bd. of Supervisors for Southern Univ. and Agricultural and Mech. College*, 850 F.3d 731, 741-742 (5th Cir. 2017) (citing *Nat'l RR. Passenger Corp. v.*

    *Morgan*, 536 U.S. 105, 113 (2004)). *See, e.g. Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269, 273 (5th Cir. 2013) ("discrete discriminatory acts are not entitled to the shelter of the continuing violation doctrine").

h. Under the ADEA, "multiple discrete acts of discrimination during" an employee's tenure do not collectively constitute "one 'unlawful employment practice.'" *Lucenio v. Houston I.S.D.*, No. 4:21-cv-00650, 2022 WL 658838, at *12 (S.D. Tex. Feb. 16, 2022) (quoting *Morgan*, 536 U.S. at 117)).

i. "Equitable tolling applies to statutes of limitations because the statute of limitations 'encourages the plaintiff to pursue his rights diligently' and does not have its purpose furthered 'when an extraordinary circumstance prevents [a plaintiff] from bringing a timely action.'" *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 527 (N.D. Tex. 2021) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014)). "Therefore, the discovery rule does not apply unless 'the nature of the injury incurred is inherently undiscoverable.'" *Id.* (quoting *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009)).

j. "Equitable tolling is to be applied sparingly." Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 880 (5th Cir. 2003) (quoting Nat'l RR Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).

k. "[E]quitable tolling might apply due to fraudulent concealment where 'the defendants concealed the conduct complained of, and . . . the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim.'" *Id.* (quoting *Texas v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988)) (alterations original).

l. The Lilly Ledbetter Fair Pay Act of 2009 redefined "occurrence" for the ADEA to say that "an unlawful employment practice occurs, with respect to discrimination in compensation . . . when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 29 U.S.C. § 626(d)(3).

m. Attorneys' fees under the ADEA are only available to a plaintiff who is a "prevailing party." *Tyler v. Union Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002).

n. Under the Texas Labor Code (the "Code"), "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Lab. Code § 21.051.

o. Under the Code, an "unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age or disability was a motivating factor for an employment practice, even if other factors also motivated the practice[.]" Tex. Lab. Code § 21.125(a). "Motivating factor"

    means that the employee's age was "a reason for making the decision at the time it was made." *Dallas County Sheriff's Dep't v. Gilley*, 114 S.W.3d 689, 693 (Tex. App.—Dallas 2003, no pet.). *See also Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) (in gender discrimination case, "in saying that gender played a *motivating part* in an employment decision, we mean that, if we asked the employer *at the moment of the decision what its reasons were* and if we received a truthful response, one of those reasons would be that the applicant or employee was a woman").

p.     The Code provides that "a person claiming to be aggrieved by an unlawful employment practice . . . may file a complaint with" the Texas Workforce Commission—Civil Rights Division." Tex. Lab. Code § 21.201. With the exception of sexual harassment complaints, "a complaint under this subchapter[1] must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." *Id.* § 21.202(a). "The commission shall dismiss an untimely complaint." *Id.* § 21.202(b). The charging party becomes entitled to a "notice of right to file a civil action" 180 days after filing a complaint, and must file that civil action (a) within 60 days of receiving the notice of rights letter *and* (b) within two years of filing the complaint. *Id.* §§ 21.252, 21.254, 21.256.

q.     Under Texas law, the 180-day limitations period "begins to run when the employee is informed of the allegedly discriminatory employment decision." *Ajayi v. Walgreen Co.*, 562 F. App'x 243, 246 (5th Cir. 2014) (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996)). Just as it is "well established in this circuit that in age discrimination cases the limitations period begins to run when the plaintiff knows of the discriminatory *act*, not when he first perceives the discriminatory motive . . . Texas courts of appeals have adopted this position." *Ajayi*, 562 F. App'x at 246 (citing *Ogletree v. Glen Rose Indep. Sch. Dist.*, 314 S.W.3d 450, 455 (Tex. App.—Waco 2010, pet. denied); *Acosta v. Memorial Hermann Hosp. Sys.*, No. 14-07-00001-CV, 2008 WL 198852, at *4 (Tex. App.—Houston [14th Dist.] Jan. 22, 2008, pet. denied); *Abbott v. Rankin*, No. 06-07-00149-CV, 2008 WL 5156453, at *3 (Tex. App—Texarkana Dec. 10, 2008, pet. denied)).

r.     The Texas Labor Code does not have an expanded definition of "occurrence" for compensation discrimination claims. Indeed, the Texas Labor Code does not define "occurrence" at all. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 506-507 (Tex. 2012). Case law provides that an "occurrence" happens, and the limitations period begins to run, when the employee is informed of the allegedly discriminatory employment decision. *Id.* (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996)).

s.     "The 180-day limitations period for an employment discrimination complaint begins when the employee is informed of the allegedly discriminatory decision, not when that decision comes to fruition. The date of the discriminatory act controls,

***not some later date when the employee discovers that the act is discriminatory***." *Abbott v. Rankin*, No. 06-07-00149-CV, 2008 WL 5156453, at *3 (Tex. App.—Texarkana Dec. 10, 2008, pet. denied) (citations omitted). *See, e.g.*, *Gilles-Gonzalez v. Univ. of Tex. Sw. Med. Ctr.*, No. 05-16-00078-CV, 2016 WL 3971411, at *4 (Tex. App.—Dallas July 22, 2016, no pet.) ("limitations period begins to run on the date the discriminatory act occurred, not on the date the victim first perceives that a discriminatory motive caused the act") (citing *Merrill*, 806 F.2d at 605); *Ogletree v. Glen Rose I. S. D.*, 314 S.W.3d 450, 455 (Tex. App.—Waco 2010, pet. denied) (relying on *Merrill* and holding that the statute of limitations for employment discrimination claims runs from the date of occurrence, not the date of discovery of discriminatory intent).

t.  An aggrieved party must file a charge of discrimination with the Texas Workforce Commission, and by law, "the commission shall dismiss an untimely complaint." *Id.* This 180-day filing deadline, while not jurisdictional, is "mandatory." *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 553 (5th Cir. 2020). Failure to timely satisfy the administrative-exhaustion requirement bars recovery and warrants dismissal of any civil action not preceded by a timely written complaint. *Id.* at 552, 555.

u.  Under Texas law, the "continuing violation doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2006, no pet.). In some instances, "equitable considerations may require that the filing period not begin until acts supportive of a civil rights action are, or should be, apparent to a reasonably prudent person in the same or a similar position." *Id.* (quoting *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 31 (Tex. App.—Austin 1998, pet. denied)). The "touchstone" in determining whether to apply the continuing violation doctrine is "whether [the] employee was put on notice that his rights had been violated." *Id.* (citing *Hackabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)). *See White v. United Parcel Serv., Inc.*, No. H-20-2813, 2021 WL 4941998, at *7 (S.D. Tex. Oct. 22, 2021) (citing and applying *Davis*).

v.  When sitting in diversity (as the Court is for purposes of Drew's Texas Labor Code claim), "federal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations." *Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 742-743 (W.D. Tex. 2015) (quoting *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011)).

w.  Under Texas law, "equitable tolling is a 'sparingly' used doctrine." *Hand v. Stevens Transp., Inc. Employee Benefit Plan*, 83 S.W.3d 286, 293 (Tex. App.—Dallas 2002, no pet.) (quoting *Irwin v. Dep't of Veterans Avairs*, 498 U.S. 89, 96 (1990)). For example, "courts will apply the equitable tolling doctrine in misidentification cases where applying the statute of limitations would not serve its legitimate purpose." *Torres v. Johnson*, 91 S.W.3d 905, 909 (Tex. App.—Fort Worth 2002, no pet.).

x.  The "purpose of statutes of limitations is to compel the assertion of claims within a reasonable period so that the opposite party has a fair opportunity to defend while witnesses are available and the evidence if fresh in their minds." *Id.* at 908 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)).

y.  In Texas, "the discovery rule" may delay accrual or toll limitations, and applies "on a categorical basis to injuries that are both inherently undiscoverable and objectively verifiable." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). Similar to federal precedent, "fraudulent concealment is a fact-specific equitable doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence." *Id.* at 229 (citing *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011)).

z.  "The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry which, if pursued, would lead to the discovery of the concealed cause of action." *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1982). "Knowledge of such facts is in law equivalent to knowledge of the cause of action." *Id.*

aa. The Texas Supreme Court has made clear that the Lilly Ledbetter Fair Pay Act is not incorporated by reference into the Texas Labor Code. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507-508 (Tex. 2012) (explaining, in the specific context of the Ledbetter Act, that the "general purposes provision" of the Texas Commission on Human Rights Act, which states that one of the purposes of the TCHRA is to provide for the "execution of the policies of Title VII . . . and its subsequent amendments" does ***not*** mean that all amendments are automatically incorporated into the TCHRA). *See, e.g.*, *Blasingame v. Eli Lilly and Co.*, No. H-11-4522, 2013 WL 5705234, at *5 (S.D. Tex. Oct. 18, 2013) (citing *Chatha* and holding that the Lilly Ledbetter Fair Pay Act "does not act to extend the time for filing claims under the TCHRA").

bb. Under the Texas Labor Code, "in a complaint in which the complainant proves a violation under Subsection (a)," i.e., proves that age or another impermissible consideration was motivating factor for an employment practice, "and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court may grant declaratory relief, injunctive relief except as otherwise provided by this subsection, and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a complaint under Subsection (a), but may not award damages or issue an order requiring an admission, reinstatement, hiring, promotion, or back pay." Tex. Lab. Code § 21.215(b) (emphasis added).

cc. The Texas Labor Code specifically authorizes awards of attorneys' fees: "in a proceeding under this chapter, a court may allow a prevailing party, other than [the Texas Workforce Commission], a reasonable attorney fee as part of the costs." Tex. Lab. Code § 21.259(a).

9.  **Contested Propositions of Law**

    **PLAINTIFF**

    [to be provided]

    **DEFENDANT**

    [to be provided after conference as discussed in preface, at which it will be determined whether any of Defendant's proposed agreed propositions of law, stated above, are contested]

10. **Exhibits**

    A.  On a separate form similar to the one provided by the Clerk, each party has attached four lists of all exhibits expected to be offered and will make the exhibits available for examination by opposing counsel.  All documentary exhibits must be exchanged before trial, except for rebuttal exhibits or those whose use cannot be anticipated.

    **Four Copies of Defendant's Exhibit List are Attached**

    B.  The Parties acknowledge that each party requiring authentication of an exhibit must notify the offering counsel in writing within five days after the exhibit is listed and made available; failure to object in writing in advance of the trial concedes authenticity.

    C.  Within reason, other objections to admissibility of exhibits must be made at least three business days before trial; the Court will be notified in writing of disputes, with copies of the disputed exhibit and authority.

11. **Witnesses**

    A.  On a separate form, each party has attached four lists with the names and addresses of witnesses who may be called with a brief statement of the nature of their testimony.

    **Four Copies of Defendant's Witness List are Attached**

    B.  If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

**12.     Settlements**

Counsel for the parties have exchanged settlement offers, but the parties are very far apart.

**13.     Trial**

Defendant anticipates that trial will take two to three days and does not foresee any logistical problems of the type mentioned in the Court's template joint pretrial order.

**14.     Attachments**

Defendant's proposed findings of fact are attached in duplicate and have been filed separately; however, until the conference described in the preface occurs, Defendant is unable to state which of its proposed findings of fact are agreed and which are contested.

Defendant's proposed conclusions of law with authority are attached in duplicate and have been filed separately.

Approved:

_____     Date:_____
Attorney-in-Charge, Plaintiff


  _/s/ Gary D. Eisenstat_____     Date:  December 27, 2023
Attorney-in-Charge, Defendant

Respectfully submitted,

By: /s/ *Gary D. Eisenstat*
Gary D. Eisenstat
Texas State Bar No. 06503200
gary.eisenstat@ogletree.com
John M. Barcus
Texas State Bar No. 24036815
john.barcus@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas 75225
(214) 987-3800
(214) 987-3927 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2023, the foregoing document was filed using the Court's electronic filing system, which will send notification of such filing to all counsel of record.

/s/ *Gary D. Eisenstat*
Gary D. Eisenstat