# EXHIBIT D



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PETER BARBARA and | § | |
| JOHN DREW, | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | CIVIL ACTION NO.: 4:22-CV-03340 |
| v. | § | |
| | § | |
| MCGRIFF INSURANCE SERVICES, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## DEFENDANT'S PROPOSED CONCLUSIONS OF LAW

Defendant hereby submits the following Proposed Conclusions of Law:

## CONCLUSIONS OF LAW

**A.    Drew's Claim under the Age Discrimination in Employment Act.**

**1.    Applicable Law:  Elements and But-For Causation.**

1.    The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). McGriff concedes that it is an "employer" under the Age Discrimination in Employment Act ("ADEA"), as defined at 29 U.S.C. § 630(b).

2.    To prevail on a cause of action for violation of 29 U.S.C. § 623(a)(1), "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action." *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). "The burden of persuasion does not shift to the employer to show that it would have

taken the actions regardless of age, even where a plaintiff has produced some evidence that age was one motivating factor in that decision." *Gross*, 557 U.S. at 180.

### 2. **Drew Failed to Prove "But For" Age Discrimination.**

3. Drew failed to prove, by a preponderance of the evidence, that Drew's age was the "but for" cause of any adverse employment action taken or alleged to have been taken against him by McGriff, including the decision not to offer him a forgivable loan under the Program or otherwise. Accordingly, judgment against Drew and for McGriff on Drew's claim for violation of the ADEA is appropriate.

### 3. **Applicable Law:  Accrual, Limitations, and Exhaustion of Remedies.**

4. The ADEA also provides that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed (A) within 180 days after the alleged unlawful practice occurred; or (B) in a case to which section 633(b) of this title applies,[1] within 300 days after the alleged unlawful practice occurred[.]" 29 U.S.C. § 626(d)(1)(A)-(B).

5. Under the ADEA, "the Fifth Circuit has expressly rejected the notion that a Title VII discrimination claim – and its attendant pre-suit requirements period – begins to accrue when the plaintiff learns of discriminatory intent ,as opposed to the discriminatory act itself." *Li v. Univ. of Tex. Rio Grande Valley*, No. 7:15-CV-00534, 2018 WL 706472, at *5 (S.D. Tex. Feb. 2, 2018) (citing, *inter alia*, *Merrill v. Southern Meth. Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (180 day limitations period begins to run when a plaintiff knows or reasonably should know that the discriminatory act has occurred, not when he or she first perceives that a discriminatory motive

---

[1] This refers to "dual-filing" states like Texas.

caused the act)). *See, e.g., Foster v. United Rentals (North America), Inc.*, No. 2:16-CV-114, 2018 WL 1474186, at *3 (S.D. Tex. March 9, 2018) (applying same principle to ADEA claim).

### 4.   Drew's ADEA Claim Accrued in 2008, and is Barred by Limitations and/or a Failure to Exhaust Administrative Remedies.

6.     In 2008, Drew knew that (i) the forgivable loan portion of the Program existed, (ii) he had not been selected to receive a forgivable loan, despite having had a "book" in excess of $2.5 million, and (iii) he was over forty years old. Drew contends that his failure to receive a loan of $500,000 in 2008 was an act of discrimination. Accordingly, Drew's time to file a charge of discrimination arising out of McGriff's 2008 decision began to accrue *in* 2008, when he knew that the allegedly discriminatory act had occurred. Drew failed to file a charge of discrimination within 180 (or 300) days of the time he learned of McGriff's decision not to issue him a forgivable loan. Drew's ADEA claim is barred under 29 U.S.C. § 626(d)(1)(A)-(B). Accordingly, judgment against Drew and for McGriff on Drew's claim for violation of the ADEA is appropriate for this independent reason.

### 5.   Applicable Law: "Continuing Violation" Doctrine.

7.     Drew alleged in his Charge of Discrimination that McGriff's conduct constituted a "continuing violation." Claims "based on discrete acts cannot rely on a continuing violation theory." *Heath v. Bd. of Supervisors for Southern Univ. and Agricultural and Mech. College*, 850 F.3d 731, 741-742 (5th Cir. 2017) (citing *Nat'l RR. Passenger Corp. v. Morgan*, 536 U.S. 105, 113 (2004)). *See, e.g. Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269, 273 (5th Cir. 2013) ("discrete discriminatory acts are not entitled to the shelter of the continuing violation doctrine"). "The continuing violations doctrine, which most frequently applies in the employment-discrimination context, should not be invoked where defendants took action that 'in fairness and logic,' should have alerted [the plaintiff] to act years ago.'" *Middaugh v. InterBank*, 528 F. Supp.

3d 509, 527 (N.D. Tex. 2021) (quoting *Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018))
(alteration original).

### 6. The Continuing Violation Doctrine Does Not Apply to Drew's Claims.

8.      Drew's claim under the ADEA arises out of McGriff's decision in 2008 to decline
to issue him a forgivable loan despite having a "book" in excess of $2.5 million. That decision,
even if one were to assume it was motivated by discriminatory animus, was a "discrete
discriminatory act." Drew has not shown any subsequent discriminatory act, but even if he had,
"multiple discrete acts of discrimination during" an employee's tenure do not collectively
constitute "one 'unlawful employment practice.'" *Lucenio v. Houston I.S.D.*, No. 4:21-cv-00650,
2022 WL 658838, at *12 (S.D. Tex. Feb. 16, 2022) (quoting *Morgan*, 536 U.S. at 117)). The
continuing violation theory does not apply to Drew's claims under the ADEA.

### 7. Applicable Law:  Discovery Rule, Equitable Tolling, Equitable Estoppel.

9.      Drew contends that the "discovery rule," "equitable tolling," and/or "equitable
estoppel" apply to his claims under the ADEA. Drew's live pleading does not allege or make
specific reference to the "discovery rule," "equitable tolling," and/or "equitable estoppel."
However, even if the Court were to find that Drew's pleading gave adequate notice of his intention
to rely on one or more of these theories, they do not apply.

10.     "Equitable tolling applies to statutes of limitations because the statute of limitations
'encourages the plaintiff to pursue his rights diligently' and does not have its purpose furthered
'when an extraordinary circumstance prevents [a plaintiff] from bringing a timely action.'"
*Middaugh v. InterBank*, 528 F. Supp. 3d 509, 527 (N.D. Tex. 2021) (quoting *CTS Corp. v.
Waldburger*, 573 U.S. 1, 10 (2014)). "Therefore, the discovery rule does not apply unless 'the
nature of the injury incurred is inherently undiscoverable.'" *Id.* (quoting *Beavers v. Metro. Life
Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009)). "Similarly, equitable tolling might apply due to

fraudulent concealment where 'the defendants concealed the conduct complained of, and . . . the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim.'" *Id.* (quoting *Texas v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988)) (alterations original).

      **8.**    **The Discovery Rule, Equitable Tolling, and Equitable Estoppel Do Not Apply.**

      11.    Even if Drew had pled sufficient facts to put McGriff on notice of his intent to rely on the "discovery rule," "equitable tolling," and "equitable estoppel," his claims remain untimely in light of the authority cited above, because "the Fifth Circuit has expressly rejected the notion that a Title VII discrimination claim – and its attendant pre-suit requirements period – begins to accrue when the plaintiff learns of discriminatory intent, as opposed to the discriminatory act itself." *Li* 2018 WL 706472, at *5; *Foster*, 2018 WL 1474186, at *3.

      12.    As noted above, Drew knew his (that he was over 40) when McGriff made the decision in 2008 to not offer him a discretionary forgivable loan. Drew knew that McGriff did not offer him a forgivable loan in 2008, and Drew knew the size of his book of business. Those are the ***only*** facts he needed to know to be on notice of his potential cause of action for age discrimination. His injury was not "inherently undiscoverable," meaning that the discovery rule does not apply. McGriff did not "conceal the conduct complained of," meaning that equitable tolling does not apply. The fact that Drew did not learn of McGriff's alleged discriminatory motive, whether because the motive was inherently undiscoverable or because of obfuscatory reasons alleged to have been articulated by McGriff in response to Drew's attempts to learn McGriff's motive, is immaterial as a matter of law. As such, the discovery rule, equitable tolling, and/or equitable estoppel, even if properly pleaded, do not overcome McGriff's affirmative defenses of limitations and failure to exhaust administrative remedies.

9.    **Applicable Law:  The Ledbetter Act and Damages.**

13.    Drew contends that certain amendments to the ADEA, following in the wake of the Lilly Ledbetter Fair Pay Act of 2009, operate to render his charge of discrimination timely, despite the fact that it was filed in 2021 and relies on a discrete discriminatory act that occurred in 2008. The plaintiff in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) worked for her employer from 1979 until 1998. *Id.* at 621. She claimed that over the course of her employment, she received unfavorable performance reviews because of her sex, resulting in lower pay increases than male colleagues received, such that "toward the end of her time with [her employer], she was being paid significantly less than any of her male colleagues." *Id.* at 622. She filed a charge of discrimination in 1998, did not allege that any discriminatory pay decisions were *made* in 1997 or 1998, but sought to recover back pay for her entire term of employment under a theory of liability referred to as the "paycheck accrual" rule, *i.e.*, the theory that each paycheck "tainted" by the present effects of past discrimination restarted her filing period and opened up back pay damages beginning with the original discriminatory decision.

14.    The United States Supreme Court rejected this argument, insofar as the plaintiff made "no claim that intentionally discriminatory conduct occurred during the charging period[;] . . . instead, she argues simply that [the employer's] conduct during the charging period gave present effect to discriminatory conduct outside of that period." *Id.* at 628. The plaintiff "should have filed an EEOC charge within 180 days after each allegedly discriminatory pay decision was made and communicated to her. She did not do so, and the paychecks that were issued to her during the 180 days prior to the filing of her EEOC charge do not provide a basis for overcoming that prior failure." *Id.* at 628-629.

15.    Congress responded to the *Ledbetter* decision by amending Title VII and the ADEA to adopt the paycheck accrual rule. The Lilly Ledbetter Fair Pay Act of 2009 redefined

"occurrence" for purposes of both statutes to say that "an unlawful employment practice occurs, with respect to discrimination in compensation . . . when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 29 U.S.C. § 626(d)(3) (ADEA). *See* 42 U.S.C. § 2000e-5(e)(3)(A) (Title VII). Accordingly, a plaintiff similarly situated to the plaintiff in *Ledbetter* now can reach back to those original, discriminatory performance reviews, and does not have to show a recent discriminatory compensation decision, so long as they file a charge within 180 days of the most recent instance of being "affected by application" of the original discriminatory pay decision.

**10.   Even Assuming Drew Proved that Age Discrimination was the "But For" Cause of McGriff's 2008 Decision, He Suffered No Harm in the Relevant Period.**

16.    The Court has already concluded that Drew failed to prove that age discrimination was the "but for" cause of McGriff's decision not to offer him a discretionary forgivable loan. Assuming *arguendo* that Drew did prove "but for" causation by a preponderance of the evidence, however, he has no recoverable damages even if the Ledbetter Act provisions of the ADEA are considered and applied.

17.    The Ledbetter provisions merely extend the statute of limitations for filing a charge; they do not provide for unlimited damages. That is, an ADEA plaintiff alleging discrimination in compensation may reach back to a long-ago discriminatory decision (rather than a discriminatory decision within the 180-day period prior to filing a charge), but is nevertheless limited to damages suffered within 180 days of the last paycheck tainted by the discriminatory decision.

18.    The plaintiff in *Ledbetter*, had the Act been in place, would have been entitled to recover two years of damages, and then only because a two-year "look back" is written into Title VII. *See* 42 U.S.C. § 2000e-5(e)(3)(B) (permitting recovery of back pay "for up to two years

preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge"). There is no corresponding language in the ADEA, so the ordinary 180-day "look back" applies.

19.    Drew did not suffer incremental or "paycheck-to-paycheck" damages. He suffered damages, if at all, in 2008, when McGriff elected not to issue him a discretionary $500,000 loan, forgivable over a ten-year period. Drew has not shown that this decision caused him to receive less money than he would otherwise have been entitled to receive in any future pay period, including the pay periods occurring within the 180 days prior to the date Drew filed his Charge of discrimination. For example, Drew has not shown that his failure to receive a loan in 2008 caused his salary in future pay periods to be lower than it otherwise would have been. He likewise has not shown that his failure to receive a loan in 2008 caused him to fail to receive a loan (or any other form of special compensation) in any future pay period. As discussed above, if Drew *had* received a $500,000 forgivable loan in 2008, he never would have been eligible to receive an additional loan under the terms of the Program, because he never reached the next threshold in book size.

20.    Case law makes this clear that this is how the Ledbetter Act provisions operate. In *Kellogg v. Ball State Univ.*, 984 F.3d 525 (7th Cir. 2021), the plaintiff established that her starting pay rate was affected by gender discrimination. She worked for twelve years, and throughout that period "suffered the effects of the [discriminatory] approach to her starting pay." *Id.* at 526. After twelve years, she sued. It did not matter that the decision maker's discriminatory statement was "well outside the statute of limitations period," because of the Ledbetter provisions. *Id.* at 527. It was enough to establish *liability*, because "all of [plaintiff's pay] resulted, at least in part, from that decision" because all of her subsequent pay raises were based on her starting salary. *Id.* at 529. Accordingly, the plaintiff could rely on the "initial discriminatory statement, even though it

occurred outside the limitations period, to seek damages from *any paychecks that she received within the statute of limitations window.*" *Id.* Drew suffered no damages "within the statute of limitations window."

### 11. Drew Has Suffered No Compensable Damages.

21.    Beginning in 2005 and continuing to the present, Drew – unlike any other McGriff Producer – has received full credit allocations on all of his "book," and did not split those allocations with other Producers who worked on those accounts. By virtue of this special compensation plan, Drew has received over this period of time approximately an extra $1.4 million dollars that he would not have otherwise received. This amount is greater than any amount of a forgivable loan that Drew would have received if McGriff had selected him to participate in the forgivable loan portion of the Program. Drew would not have received both the special compensation plan *and* been selected to participate in the forgivable loan portion of the Program. Therefore, Drew has not suffered any compensable damages under the ADEA.

### 11. Applicable Law:  Attorneys' Fees.

22.    Drew seeks an award of attorneys' fees for McGriff's alleged ADEA violation. The ADEA specifically authorizes awards of attorneys' fees by referencing the attorney fee provision in the Fair Labor Standards Act, 29 U.S.C. § 626(b) (ADEA) (referring to 29 U.S.C. § 216(b) (FLSA)). Thus, in an ADEA action, "the court shall . . . in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Attorneys' fees, while mandatory, are only available to a plaintiff who is a "prevailing party." *Tyler v. Union Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002). *See Farrar v. Hobby*, 506 U.S. 103, 113 (1992) (a "judgment for damages in any amount," constitutes "relief on the merits").

12.   **Drew Is Not Entitled to Recover Attorneys' Fees.**

23.   Drew has failed to prove that age discrimination was the "but for" cause of McGriff's 2008 decision not to award him a discretionary for givable loan. He therefore has not prevailed on his claim and is not entitled to a judgment in any amount. Moreover, even if the Court presumes that discriminatory animus *was* the "but for" cause of McGriff's 2008 decision, for the reasons explained above, Drew suffered no compensable damages even if the Ledbetter Act provisions render his charge of discrimination timely. Accordingly, Drew is not entitled to a "judgment for damages in any amount," and therefore is not a prevailing party. The Court is without authority to award attorneys' fees, and declines to do so. However, McGriff is the prevailing party and is entitled to recover and hereby awarded its taxable court costs.

B.   **Drew's Claim Under the Texas Labor Code.**

1.   **Applicable Law:  Elements and Causation.**

24.   Under the Texas Labor Code (the "Code"), "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Lab. Code § 21.051. McGriff concedes that it is an employer under the Code. Tex. Lab. Code § 21.002(8).

25.   Under the Code, an "unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age or disability was a motivating factor for an employment practice, even if other factors also motivated the practice[.]" Tex. Lab. Code § 21.125(a). "Motivating factor" means that the employee's age was "a reason for making the decision at the time it was made." *Dallas County Sheriff's Dep't v. Gilley*, 114 S.W.3d 689, 693 (Tex. App.—Dallas 2003, no pet.). *See also Price Waterhouse v. Hopkins*, 490 U.S. 228,

250 (1989) (in gender discrimination case, "in saying that gender played a *motivating part* in an employment decision, we mean that, if we asked the employer *at the moment of the decision what its reasons were* and if we received a truthful response, one of those reasons would be that the applicant or employee was a woman").

**2.    Drew Failed to Prove Discriminatory Animus Was a Motivating Factor in McGriff's Challenged Decision.**

26.    Drew failed to prove, by a preponderance of the evidence, that Drew's age was the a motivating factor in McGriff's decision to take any actual or alleged adverse employment action against him, including the decision not to offer him a forgivable loan under the Program or otherwise. Accordingly, judgment against Drew and for McGriff on Drew's claim for violation of the Texas Labor Code is appropriate.

**2a.    McGriff Demonstrated That It Would Have Taken The Same Action in the Absence of the Impermissible Motive.**

IF AND ONLY TO THE EXTENT THE COURT FINDS THAT DREW DID PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT AGE DISCRIMINATION WAS A "MOTIVATING FACTOR" IN McGRIFF'S 2008 DECISION TO NOT OFFER DREW A LOAN, McGRIFF REQUESTS THE FOLLOWING CONCLUSION OF LAW.

27.    McGriff proved, by a preponderance of the evidence, that it would have taken the same action against Drew, *i.e.*, declined to offer him a forgivable loan in 2008, even in the absence of age discrimination as a motivating factor.

**3.    Applicable Law:  Accrual, Limitations, and Exhaustion of Remedies.**

28.    The Texas Labor Code provides that "a person claiming to be aggrieved by an unlawful employment practice . . . may file a complaint with" the Texas Workforce Commission—Civil Rights Division." Tex. Lab. Code § 21.201. With the exception of sexual harassment complaints, "a complaint under this subchapter[2] must be filed not later than the 180th day after the

---

[2] Subchapter E:  Administrative Review, Tex. Lab. Code §§ 21.201 *et seq.*

date the alleged unlawful employment practice occurred." *Id.* § 21.202(a). "The commission shall dismiss an untimely complaint." *Id.* § 21.202(b). The charging party becomes entitled to a "notice of right to file a civil action" 180 days after filing a complaint, and must file that civil action (a) within 60 days of receiving the notice of rights letter *and* (b) within two years of filing the complaint. *Id.* §§ 21.252, 21.254, 21.256.

### 4. Drew's Claim Under the Code Accrued in 2008, and is Barred by Limitations and/or a Failure to Exhaust Administrative Remedies.

29.     In 2008, Drew knew that (i) the forgivable loan portion of the Program existed, (ii) he had not been selected to receive a forgivable loan despite having had a "book" in excess of $2.5 million, and (iii) he was over forty years old. Drew contends that his failure to receive a loan of $500,000 in 2008 was an act of discrimination. Accordingly, Drew's time to file a charge of discrimination arising out of McGriff's 2008 decision began to accrue *in* 2008, when he knew that the allegedly discriminatory act had occurred. Drew failed to file a charge of discrimination within 180 days of the time he learned of McGriff's decision not to issue him a forgivable loan. Drew's Texas Labor Code claim is barred under Texas Labor Code § 21.202(a). Accordingly, judgment against Drew and for McGriff on Drew's claim for violation of the Texas Labor Code is appropriate for this independent reason.

### 5. Applicable Law: "Continuing Violation" Doctrine.

30.     Drew alleged in his Charge of Discrimination that McGriff's conduct constituted a "continuing violation." Under Texas law, the "continuing violation doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2006, no pet.). In some instances, "equitable considerations may require that the filing period not begin until acts supportive of a civil rights action are, or should be, apparent to a reasonably prudent person

in the same or a similar position." *Id.* (quoting *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 31 (Tex. App.—Austin 1998, pet. denied)). The "touchstone" in determining whether to apply the continuing violation doctrine is "whether [the] employee was put on notice that his rights had been violated." *Id.* (citing *Hackabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)). *See White v. United Parcel Serv., Inc.*, No. H-20-2813, 2021 WL 4941998, at *7 (S.D. Tex. Oct. 22, 2021) (citing and applying *Davis*).

### 6.   The Continuing Violation Doctrine Does Not Apply.

31.   Drew's claim under the Texas Labor Code arises out of McGriff's decision in 2008 to decline to issue him a forgivable loan despite having a "book" in excess of $2.5 million. That decision, even if one were to assume it was motivated by discriminatory animus, was a "discrete discriminatory act." Drew has not shown any subsequent discriminatory act, but even if he had, "a series of discrete acts" during an employee's tenure do not collectively constitute a continuing violation." *White*, 2021 WL 4941998, at *7 (construing and applying Texas Labor Code). The continuing violation theory does not apply to Drew's claims under the Texas Labor Code.

### 7.   Applicable Law:  Discovery Rule, Equitable Tolling, Equitable Estoppel.

32.   Drew contends that the "discovery rule," "equitable tolling," and/or "equitable estoppel" apply to his claims under the Texas Labor Code. Drew's live pleading does not allege or make specific reference to the "discovery rule," "equitable tolling," and/or "equitable estoppel." However, even if the Court were to find that Drew's pleading gave adequate notice of his intention to rely on one or more of these theories, they do not apply.

33.   When sitting in diversity (as the Court is for purposes of Drew's Texas Labor Code claim), "federal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations." *Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 742-743 (W.D. Tex. 2015) (quoting *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011)). Under Texas law,

"equitable tolling is a 'sparingly' used doctrine." *Hand v. Stevens Transp., Inc. Employee Benefit Plan*, 83 S.W.3d 286, 293 (Tex. App.—Dallas 2002, no pet.) (quoting *Irwin v. Dep't of Veterans Avairs*, 498 U.S. 89, 96 (1990)). For example, "courts will apply the equitable tolling doctrine in misidentification cases where applying the statute of limitations would not serve its legitimate purpose." *Torres v. Johnson*, 91 S.W.3d 905, 909 (Tex. App.—Fort Worth 2002, no pet.). The "purpose of statutes of limitations is to compel the assertion of claims within a reasonable period so that the opposite party has a fair opportunity to defend while witnesses are available and the evidence if fresh in their minds." *Id.* at 908 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)).

34.    In Texas, "the discovery rule" may delay accrual or toll limitations, and applies "on a categorical basis to injuries that are both inherently undiscoverable and objectively verifiable." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). Similar to federal precedent, "fraudulent concealment is a fact-specific equitable doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence." *Id.* at 229 (citing *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011)). "The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry which, if pursued, would lead to the discovery of the concealed cause of action." *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1982). "Knowledge of such facts is in law equivalent to knowledge of the cause of action." *Id.*

**8.    The Discovery Rule, Equitable Tolling, and Equitable Estoppel Do Not Apply.**

35.    Even if Drew had pled sufficient facts to put McGriff on notice of his intent to rely on the "discovery rule," "equitable tolling," and "equitable estoppel," his claims remain untimely in light of the authority cited above. Under Texas law, the 180-day limitations period "begins to run when the employee is informed of the allegedly discriminatory employment decision." *Ajayi*

*v. Walgreen Co.*, 562 F. App'x 243, 246 (5th Cir. 2014) (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996)). Just as it is "well established in this circuit that in age discrimination cases the limitations period begins to run when the plaintiff knows of the discriminatory *act*, not when he first perceives the discriminatory motive . . . Texas courts of appeals have adopted this position." *Ajayi*, 562 F. App'x at 246 (citing *Ogletree v. Glen Rose Indep. Sch. Dist.*, 314 S.W.3d 450, 455 (Tex. App.—Waco 2010, pet. denied); *Acosta v. Memorial Hermann Hosp. Sys.*, No. 14-07-00001-CV, 2008 WL 198852, at *4 (Tex. App.—Houston [14th Dist.] Jan. 22, 2008, pet. denied); *Abbott v. Rankin*, No. 06-07-00149-CV, 2008 WL 5156453, at *3 (Tex. App—Texarkana Dec. 10, 2008, pet. denied)).

36.    Drew knew that he was at least age 40 when McGriff made the decision in 2008 to not offer him a discretionary forgivable loan. Drew knew that McGriff did not offer him a forgivable loan in 2008, and Drew knew the size of his book of business. Those are the ***only*** facts he needed to know to be on notice of his potential cause of action for age discrimination. His injury was not "inherently undiscoverable," meaning that the discovery rule does not apply. McGriff did not "conceal the conduct complained of," meaning that equitable tolling does not apply. The fact that Drew did not learn of McGriff's alleged discriminatory motive, whether because the motive was inherently undiscoverable or because of obfuscatory reasons alleged to have been articulated by McGriff in response to Drew's attempts to learn McGriff's motive, is immaterial as a matter of law. As such, the discovery rule, equitable tolling, and/or equitable estoppel, even if properly pleaded, do not overcome McGriff's affirmative defenses of limitations and failure to exhaust administrative remedies on his Texas Labor Code claims.

**9.    There Is No Texas Equivalent to the Ledbetter Act.**

37.    The Texas Supreme Court has made clear that the Lilly Ledbetter Fair Pay Act is not incorporated by reference into the Texas Labor Code. *Prairie View A & M Univ. v. Chatha*,

381 S.W.3d 500, 507-508 (Tex. 2012) (explaining, in the specific context of the Ledbetter Act, that the "general purposes provision" of the Texas Commission on Human Rights Act, which states that one of the purposes of the TCHRA is to provide for the "execution of the policies of Title VII . . . and its subsequent amendments" does *not* mean that all amendments are automatically incorporated into the TCHRA). *See, e.g.*, *Blasingame v. Eli Lilly and Co.*, No. H-11-4522, 2013 WL 5705234, at *5 (S.D. Tex. Oct. 18, 2013) (citing *Chatha* and holding that the Lilly Ledbetter Fair Pay Act "does not act to extend the time for filing claims under the TCHRA"). Accordingly, for purposes of Drew's age discrimination claim asserted under the Texas Labor Code, Drew's time for filing a charge of discrimination arising out of McGriff's 2008 decision not to offer him a forgivable producer loan expired 300 days after that discrete act occurred.

**10.    Drew Has Suffered No Compensable Damages.**

38.    Beginning in 2005 and continuing to the present, Drew – unlike any other McGriff Producer – has received full credit allocations on all of his "book," and did not split those allocations with other Producers who worked on those accounts. By virtue of this special compensation plan, Drew has received over this period of time approximately an extra $1.4 million dollars that he would not have otherwise received. This amount is greater than any amount of a forgivable loan that Drew would have received if McGriff had selected him to participate in the forgivable loan portion of the Program. Drew would not have received both the special compensation plan *and* been selected to participate in the forgivable loan portion of the Program. Therefore, Drew has not suffered any compensable damages under the Texas Labor Code.

11.     **The Court Is Not Empowered to Award Damages.**

IF AND ONLY TO THE EXTENT THE COURT FINDS THAT DREW DID PROVE BY A
PREPONDERANCE OF THE EVIDENCE THAT AGE DISCRIMINATION WAS A
"MOTIVATING FACTOR" IN McGRIFF'S 2008 DECISION TO NOT OFFER DREW A
LOAN, McGRIFF REQUESTS THE FOLLOWING CONCLUSION OF LAW.

39.     Under the Texas Labor Code, "in a complaint in which the complainant proves a
violation under Subsection (a)," *i.e.*, proves that age or another impermissible consideration was
motivating factor for an employment practice, "and a respondent demonstrates that the respondent
would have taken the same action in the absence of the impermissible motivating factor, the court
may grant declaratory relief, injunctive relief except as otherwise provided by this subsection, and
attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a complaint
under Subsection (a), ***but may not award damages or issue an order requiring an admission,
reinstatement, hiring, promotion, or back pay.***" Tex. Lab. Code § 21.215(b) (emphasis added).
Having found that McGriff would have taken the same action, *i.e.*, declining to offer Drew a
forgivable loan under the Program in 2008, in the absence of age as a "motivating factor," the
Court may not award damages, including back pay, to Drew.

11.     **Applicable Law:  Attorneys' Fees.**

40.     Drew seeks an award of attorneys' fees for McGriff's alleged Texas Labor Code
violation. The Texas Labor Code specifically authorizes awards of attorneys' fees:  "in a
proceeding under this chapter, a court may allow a prevailing party, other than [the Texas
Workforce Commission], a reasonable attorney fee as part of the costs." Tex. Lab. Code §
21.259(a).

12.     **Drew Is Not Entitled to Attorneys' Fees.**

41.     Drew has failed to prove that age discrimination was a "motivating factor" for
McGriff's 2008 decision not to award him a discretionary for givable loan. He therefore has not

prevailed on his claim and is not entitled to a judgment in any amount. The Court is without authority to award attorneys' fees, and declines to do so. However, McGriff is the prevailing party and is entitled to recover and hereby awarded its taxable court costs.

Respectfully submitted,

By: /s/ Gary D. Eisenstat
    Gary D. Eisenstat
    Texas State Bar No. 06503200
    gary.eisenstat@ogletree.com
    John M. Barcus
    Texas State Bar No. 24036815
    john.barcus@ogletree.com
    **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
    Preston Commons West
    8117 Preston Road, Suite 500
    Dallas, Texas  75225
    (214) 987-3800
    (214) 987-3927 (Facsimile)

    **ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2023, the foregoing document was filed using the Court's electronic filing system, which will send notification of such filing to all counsel of record.

/s/ Gary D. Eisenstat
Gary D. Eisenstat



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PETER BARBARA and | § | |
| JOHN DREW, | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | CIVIL ACTION NO.: 4:22-CV-03340 |
| v. | § | |
| | § | |
| MCGRIFF INSURANCE SERVICES, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## DEFENDANT'S PROPOSED CONCLUSIONS OF LAW

Defendant hereby submits the following Proposed Conclusions of Law:

## CONCLUSIONS OF LAW

**A.    Drew's Claim under the Age Discrimination in Employment Act.**

      **1.    Applicable Law:  Elements and But-For Causation.**

1.    The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). McGriff concedes that it is an "employer" under the Age Discrimination in Employment Act ("ADEA"), as defined at 29 U.S.C. § 630(b).

2.    To prevail on a cause of action for violation of 29 U.S.C. § 623(a)(1), "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action." *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). "The burden of persuasion does not shift to the employer to show that it would have

taken the actions regardless of age, even where a plaintiff has produced some evidence that age was one motivating factor in that decision." *Gross*, 557 U.S. at 180.

       **2.**    **<u>Drew Failed to Prove "But For" Age Discrimination.</u>**

      3.    Drew failed to prove, by a preponderance of the evidence, that Drew's age was the "but for" cause of any adverse employment action taken or alleged to have been taken against him by McGriff, including the decision not to offer him a forgivable loan under the Program or otherwise. Accordingly, judgment against Drew and for McGriff on Drew's claim for violation of the ADEA is appropriate.

       **3.**    **<u>Applicable Law:  Accrual, Limitations, and Exhaustion of Remedies.</u>**

      4.    The ADEA also provides that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed (A) within 180 days after the alleged unlawful practice occurred; or (B) in a case to which section 633(b) of this title applies,[1] within 300 days after the alleged unlawful practice occurred[.]" 29 U.S.C. § 626(d)(1)(A)-(B).

      5.    Under the ADEA, "the Fifth Circuit has expressly rejected the notion that a Title VII discrimination claim – and its attendant pre-suit requirements period – begins to accrue when the plaintiff learns of discriminatory intent ,as opposed to the discriminatory act itself." *Li v. Univ. of Tex. Rio Grande Valley*, No. 7:15-CV-00534, 2018 WL 706472, at *5 (S.D. Tex. Feb. 2, 2018) (citing, *inter alia*, *Merrill v. Southern Meth. Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (180 day limitations period begins to run when a plaintiff knows or reasonably should know that the discriminatory act has occurred, not when he or she first perceives that a discriminatory motive

---

[1] This refers to "dual-filing" states like Texas.

caused the act)). *See, e.g.*, *Foster v. United Rentals (North America), Inc.*, No. 2:16-CV-114, 2018 WL 1474186, at *3 (S.D. Tex. March 9, 2018) (applying same principle to ADEA claim).

4.    **Drew's ADEA Claim Accrued in 2008, and is Barred by Limitations and/or a Failure to Exhaust Administrative Remedies.**

6.    In 2008, Drew knew that  (i) the forgivable loan portion of the Program existed, (ii) he had not been selected to receive a forgivable loan, despite having had a "book" in excess of $2.5 million, and (iii) he was over forty years old. Drew contends that his failure to receive a loan of $500,000 in 2008 was an act of discrimination. Accordingly, Drew's time to file a charge of discrimination arising out of McGriff's 2008 decision began to accrue *in* 2008, when he knew that the allegedly discriminatory act had occurred. Drew failed to file a charge of discrimination within 180 (or 300) days of the time he learned of McGriff's decision not to issue him a forgivable loan. Drew's ADEA claim is barred under 29 U.S.C. § 626(d)(1)(A)-(B). Accordingly, judgment against Drew and for McGriff on Drew's claim for violation of the ADEA is appropriate for this independent reason.

5.    **Applicable Law:  "Continuing Violation" Doctrine.**

7.    Drew alleged in his Charge of Discrimination that McGriff's conduct constituted a "continuing violation." Claims "based on discrete acts cannot rely on a continuing violation theory." *Heath v. Bd. of Supervisors for Southern Univ. and Agricultural and Mech. College*, 850 F.3d 731, 741-742 (5th Cir. 2017) (citing *Nat'l RR. Passenger Corp. v. Morgan*, 536 U.S. 105, 113 (2004)). *See, e.g. Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269, 273 (5th Cir. 2013) ("discrete discriminatory acts are not entitled to the shelter of the continuing violation doctrine"). "The continuing violations doctrine, which most frequently applies in the employment-discrimination context, should not be invoked where defendants took action that 'in fairness and logic,' should have alerted [the plaintiff] to act years ago.'" *Middaugh v. InterBank*, 528 F. Supp.

3d 509, 527 (N.D. Tex. 2021) (quoting *Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018)) (alteration original).

      **6.**      **The Continuing Violation Doctrine Does Not Apply to Drew's Claims.**

      8.      Drew's claim under the ADEA arises out of McGriff's decision in 2008 to decline to issue him a forgivable loan despite having a "book" in excess of $2.5 million. That decision, even if one were to assume it was motivated by discriminatory animus, was a "discrete discriminatory act." Drew has not shown any subsequent discriminatory act, but even if he had, "multiple discrete acts of discrimination during" an employee's tenure do not collectively constitute "one 'unlawful employment practice.'" *Lucenio v. Houston I.S.D.*, No. 4:21-cv-00650, 2022 WL 658838, at *12 (S.D. Tex. Feb. 16, 2022) (quoting *Morgan*, 536 U.S. at 117)). The continuing violation theory does not apply to Drew's claims under the ADEA.

      **7.**      **Applicable Law:  Discovery Rule, Equitable Tolling, Equitable Estoppel.**

      9.      Drew contends that the "discovery rule," "equitable tolling," and/or "equitable estoppel" apply to his claims under the ADEA. Drew's live pleading does not allege or make specific reference to the "discovery rule," "equitable tolling," and/or "equitable estoppel." However, even if the Court were to find that Drew's pleading gave adequate notice of his intention to rely on one or more of these theories, they do not apply.

      10.      "Equitable tolling applies to statutes of limitations because the statute of limitations 'encourages the plaintiff to pursue his rights diligently' and does not have its purpose furthered 'when an extraordinary circumstance prevents [a plaintiff] from bringing a timely action.'" *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 527 (N.D. Tex. 2021) (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014)). "Therefore, the discovery rule does not apply unless 'the nature of the injury incurred is inherently undiscoverable.'" *Id.* (quoting *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009)). "Similarly, equitable tolling might apply due to

fraudulent concealment where 'the defendants concealed the conduct complained of, and . . . the plaintiff failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim.'" *Id.* (quoting *Texas v. Allan Const. Co., Inc.*, 851 F.2d 1526, 1528 (5th Cir. 1988)) (alterations original).

> **8.**    **The Discovery Rule, Equitable Tolling, and Equitable Estoppel Do Not Apply.**

11.    Even if Drew had pled sufficient facts to put McGriff on notice of his intent to rely on the "discovery rule," "equitable tolling," and "equitable estoppel," his claims remain untimely in light of the authority cited above, because "the Fifth Circuit has expressly rejected the notion that a Title VII discrimination claim – and its attendant pre-suit requirements period – begins to accrue when the plaintiff learns of discriminatory intent, as opposed to the discriminatory act itself." *Li* 2018 WL 706472, at *5; *Foster*, 2018 WL 1474186, at *3.

12.    As noted above, Drew knew his (that he was over 40) when McGriff made the decision in 2008 to not offer him a discretionary forgivable loan. Drew knew that McGriff did not offer him a forgivable loan in 2008, and Drew knew the size of his book of business. Those are the ***only*** facts he needed to know to be on notice of his potential cause of action for age discrimination. His injury was not "inherently undiscoverable," meaning that the discovery rule does not apply. McGriff did not "conceal the conduct complained of," meaning that equitable tolling does not apply. The fact that Drew did not learn of McGriff's alleged discriminatory motive, whether because the motive was inherently undiscoverable or because of obfuscatory reasons alleged to have been articulated by McGriff in response to Drew's attempts to learn McGriff's motive, is immaterial as a matter of law. As such, the discovery rule, equitable tolling, and/or equitable estoppel, even if properly pleaded, do not overcome McGriff's affirmative defenses of limitations and failure to exhaust administrative remedies.

9.      **Applicable Law:  The Ledbetter Act and Damages.**

13.      Drew contends that certain amendments to the ADEA, following in the wake of the Lilly Ledbetter Fair Pay Act of 2009, operate to render his charge of discrimination timely, despite the fact that it was filed in 2021 and relies on a discrete discriminatory act that occurred in 2008. The plaintiff in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) worked for her employer from 1979 until 1998. *Id.* at 621. She claimed that over the course of her employment, she received unfavorable performance reviews because of her sex, resulting in lower pay increases than male colleagues received, such that "toward the end of her time with [her employer], she was being paid significantly less than any of her male colleagues." *Id.* at 622. She filed a charge of discrimination in 1998, did not allege that any discriminatory pay decisions were *made* in 1997 or 1998, but sought to recover back pay for her entire term of employment under a theory of liability referred to as the "paycheck accrual" rule, *i.e.*, the theory that each paycheck "tainted" by the present effects of past discrimination restarted her filing period and opened up back pay damages beginning with the original discriminatory decision.

14.      The United States Supreme Court rejected this argument, insofar as the plaintiff made "no claim that intentionally discriminatory conduct occurred during the charging period[;] . . . instead, she argues simply that [the employer's] conduct during the charging period gave present effect to discriminatory conduct outside of that period." *Id.* at 628. The plaintiff "should have filed an EEOC charge within 180 days after each allegedly discriminatory pay decision was made and communicated to her. She did not do so, and the paychecks that were issued to her during the 180 days prior to the filing of her EEOC charge do not provide a basis for overcoming that prior failure." *Id.* at 628-629.

15.      Congress responded to the *Ledbetter* decision by amending Title VII and the ADEA to adopt the paycheck accrual rule. The Lilly Ledbetter Fair Pay Act of 2009 redefined

"occurrence" for purposes of both statutes to say that "an unlawful employment practice occurs, with respect to discrimination in compensation . . . when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 29 U.S.C. § 626(d)(3) (ADEA). *See* 42 U.S.C. § 2000e-5(e)(3)(A) (Title VII). Accordingly, a plaintiff similarly situated to the plaintiff in *Ledbetter* now can reach back to those original, discriminatory performance reviews, and does not have to show a recent discriminatory compensation decision, so long as they file a charge within 180 days of the most recent instance of being "affected by application" of the original discriminatory pay decision.

**10.    Even Assuming Drew Proved that Age Discrimination was the "But For" Cause of McGriff's 2008 Decision, He Suffered No Harm in the Relevant Period.**

16.    The Court has already concluded that Drew failed to prove that age discrimination was the "but for" cause of McGriff's decision not to offer him a discretionary forgivable loan. Assuming *arguendo* that Drew did prove "but for" causation by a preponderance of the evidence, however, he has no recoverable damages even if the Ledbetter Act provisions of the ADEA are considered and applied.

17.    The Ledbetter provisions merely extend the statute of limitations for filing a charge; they do not provide for unlimited damages. That is, an ADEA plaintiff alleging discrimination in compensation may reach back to a long-ago discriminatory decision (rather than a discriminatory decision within the 180-day period prior to filing a charge), but is nevertheless limited to damages suffered within 180 days of the last paycheck tainted by the discriminatory decision.

18.    The plaintiff in *Ledbetter*, had the Act been in place, would have been entitled to recover two years of damages, and then only because a two-year "look back" is written into Title VII. *See* 42 U.S.C. § 2000e-5(e)(3)(B) (permitting recovery of back pay "for up to two years

preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge"). There is no corresponding language in the ADEA, so the ordinary 180-day "look back" applies.

19.    Drew did not suffer incremental or "paycheck-to-paycheck" damages. He suffered damages, if at all, in 2008, when McGriff elected not to issue him a discretionary $500,000 loan, forgivable over a ten-year period. Drew has not shown that this decision caused him to receive less money than he would otherwise have been entitled to receive in any future pay period, including the pay periods occurring within the 180 days prior to the date Drew filed his Charge of discrimination. For example, Drew has not shown that his failure to receive a loan in 2008 caused his salary in future pay periods to be lower than it otherwise would have been. He likewise has not shown that his failure to receive a loan in 2008 caused him to fail to receive a loan (or any other form of special compensation) in any future pay period. As discussed above, if Drew *had* received a $500,000 forgivable loan in 2008, he never would have been eligible to receive an additional loan under the terms of the Program, because he never reached the next threshold in book size.

20.    Case law makes this clear that this is how the Ledbetter Act provisions operate. In *Kellogg v. Ball State Univ.*, 984 F.3d 525 (7th Cir. 2021), the plaintiff established that her starting pay rate was affected by gender discrimination. She worked for twelve years, and throughout that period "suffered the effects of the [discriminatory] approach to her starting pay." *Id.* at 526. After twelve years, she sued. It did not matter that the decision maker's discriminatory statement was "well outside the statute of limitations period," because of the Ledbetter provisions. *Id.* at 527. It was enough to establish *liability*, because "all of [plaintiff's pay] resulted, at least in part, from that decision" because all of her subsequent pay raises were based on her starting salary. *Id.* at 529. Accordingly, the plaintiff could rely on the "initial discriminatory statement, even though it

occurred outside the limitations period, to seek damages from ***any paychecks that she received within the statute of limitations window.*** *Id.* Drew suffered no damages "within the statute of limitations window."

### 11. <u>Drew Has Suffered No Compensable Damages.</u>

21.     Beginning in 2005 and continuing to the present, Drew – unlike any other McGriff Producer – has received full credit allocations on all of his "book," and did not split those allocations with other Producers who worked on those accounts. By virtue of this special compensation plan, Drew has received over this period of time approximately an extra $1.4 million dollars that he would not have otherwise received. This amount is greater than any amount of a forgivable loan that Drew would have received if McGriff had selected him to participate in the forgivable loan portion of the Program. Drew would not have received both the special compensation plan *and* been selected to participate in the forgivable loan portion of the Program. Therefore, Drew has not suffered any compensable damages under the ADEA.

### 11. <u>Applicable Law:  Attorneys' Fees.</u>

22.     Drew seeks an award of attorneys' fees for McGriff's alleged ADEA violation. The ADEA specifically authorizes awards of attorneys' fees by referencing the attorney fee provision in the Fair Labor Standards Act, 29 U.S.C. § 626(b) (ADEA) (referring to 29 U.S.C. § 216(b) (FLSA)). Thus, in an ADEA action, "the court shall . . . in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Attorneys' fees, while mandatory, are only available to a plaintiff who is a "prevailing party." *Tyler v. Union Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002). *See Farrar v. Hobby*, 506 U.S. 103, 113 (1992) (a "judgment for damages in any amount," constitutes "relief on the merits").

**12.**     <u>Drew Is Not Entitled to Recover Attorneys' Fees.</u>

23.     Drew has failed to prove that age discrimination was the "but for" cause of McGriff's 2008 decision not to award him a discretionary for givable loan. He therefore has not prevailed on his claim and is not entitled to a judgment in any amount. Moreover, even if the Court presumes that discriminatory animus *was* the "but for" cause of McGriff's 2008 decision, for the reasons explained above, Drew suffered no compensable damages even if the Ledbetter Act provisions render his charge of discrimination timely. Accordingly, Drew is not entitled to a "judgment for damages in any amount," and therefore is not a prevailing party. The Court is without authority to award attorneys' fees, and declines to do so. However, McGriff is the prevailing party and is entitled to recover and hereby awarded its taxable court costs.

**B.**     <u>Drew's Claim Under the Texas Labor Code.</u>

    **1.**     <u>Applicable Law:  Elements and Causation.</u>

24.     Under the Texas Labor Code (the "Code"), "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Lab. Code § 21.051. McGriff concedes that it is an employer under the Code. Tex. Lab. Code § 21.002(8).

25.     Under the Code, an "unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age or disability was a motivating factor for an employment practice, even if other factors also motivated the practice[.]" Tex. Lab. Code § 21.125(a). "Motivating factor" means that the employee's age was "a reason for making the decision at the time it was made." *Dallas County Sheriff's Dep't v. Gilley*, 114 S.W.3d 689, 693 (Tex. App.—Dallas 2003, no pet.). *See also Price Waterhouse v. Hopkins*, 490 U.S. 228,

250 (1989) (in gender discrimination case, "in saying that gender played a *motivating part* in an employment decision, we mean that, if we asked the employer *at the moment of the decision what its reasons were* and if we received a truthful response, one of those reasons would be that the applicant or employee was a woman").

**2.    Drew Failed to Prove Discriminatory Animus Was a Motivating Factor in McGriff's Challenged Decision.**

26.    Drew failed to prove, by a preponderance of the evidence, that Drew's age was the a motivating factor in McGriff's decision to take any actual or alleged adverse employment action against him, including the decision not to offer him a forgivable loan under the Program or otherwise. Accordingly, judgment against Drew and for McGriff on Drew's claim for violation of the Texas Labor Code is appropriate.

**2a.    McGriff Demonstrated That It Would Have Taken The Same Action in the Absence of the Impermissible Motive.**

IF AND ONLY TO THE EXTENT THE COURT FINDS THAT DREW DID PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT AGE DISCRIMINATION WAS A "MOTIVATING FACTOR" IN McGRIFF'S 2008 DECISION TO NOT OFFER DREW A LOAN, McGRIFF REQUESTS THE FOLLOWING CONCLUSION OF LAW.

27.    McGriff proved, by a preponderance of the evidence, that it would have taken the same action against Drew, *i.e.*, declined to offer him a forgivable loan in 2008, even in the absence of age discrimination as a motivating factor.

**3.    Applicable Law:  Accrual, Limitations, and Exhaustion of Remedies.**

28.    The Texas Labor Code provides that "a person claiming to be aggrieved by an unlawful employment practice . . . may file a complaint with" the Texas Workforce Commission—Civil Rights Division." Tex. Lab. Code § 21.201. With the exception of sexual harassment complaints, "a complaint under this subchapter[2] must be filed not later than the 180th day after the

---

[2] Subchapter E:  Administrative Review, Tex. Lab. Code §§ 21.201 *et seq.*

date the alleged unlawful employment practice occurred." *Id.* § 21.202(a). "The commission shall dismiss an untimely complaint." *Id.* § 21.202(b). The charging party becomes entitled to a "notice of right to file a civil action" 180 days after filing a complaint, and must file that civil action (a) within 60 days of receiving the notice of rights letter *and* (b) within two years of filing the complaint. *Id.* §§ 21.252, 21.254, 21.256.

### 4.    Drew's Claim Under the Code Accrued in 2008, and is Barred by Limitations and/or a Failure to Exhaust Administrative Remedies.

29.    In 2008, Drew knew that  (i) the forgivable loan portion of the Program existed, (ii) he had not been selected to receive a forgivable loan despite having had a "book" in excess of $2.5 million, and (iii) he was over forty years old. Drew contends that his failure to receive a loan of $500,000 in 2008 was an act of discrimination. Accordingly, Drew's time to file a charge of discrimination arising out of McGriff's 2008 decision began to accrue *in* 2008, when he knew that the allegedly discriminatory act had occurred. Drew failed to file a charge of discrimination within 180 days of the time he learned of McGriff's decision not to issue him a forgivable loan. Drew's Texas Labor Code claim is barred under Texas Labor Code § 21.202(a). Accordingly, judgment against Drew and for McGriff on Drew's claim for violation of the Texas Labor Code is appropriate for this independent reason.

### 5.    Applicable Law:  "Continuing Violation" Doctrine.

30.    Drew alleged in his Charge of Discrimination that McGriff's conduct constituted a "continuing violation." Under Texas law, the "continuing violation doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2006, no pet.). In some instances, "equitable considerations may require that the filing period not begin until acts supportive of a civil rights action are, or should be, apparent to a reasonably prudent person

in the same or a similar position." *Id.* (quoting *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 31 (Tex. App.—Austin 1998, pet. denied)). The "touchstone" in determining whether to apply the continuing violation doctrine is "whether [the] employee was put on notice that his rights had been violated." *Id.* (citing *Hackabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)). *See White v. United Parcel Serv., Inc.*, No. H-20-2813, 2021 WL 4941998, at *7 (S.D. Tex. Oct. 22, 2021) (citing and applying *Davis*).

### 6.    <u>The Continuing Violation Doctrine Does Not Apply.</u>

31.    Drew's claim under the Texas Labor Code arises out of McGriff's decision in 2008 to decline to issue him a forgivable loan despite having a "book" in excess of $2.5 million. That decision, even if one were to assume it was motivated by discriminatory animus, was a "discrete discriminatory act." Drew has not shown any subsequent discriminatory act, but even if he had, "a series of discrete acts" during an employee's tenure do not collectively constitute a continuing violation." *White*, 2021 WL 4941998, at *7 (construing and applying Texas Labor Code). The continuing violation theory does not apply to Drew's claims under the Texas Labor Code.

### 7.    <u>Applicable Law:  Discovery Rule, Equitable Tolling, Equitable Estoppel.</u>

32.    Drew contends that the "discovery rule," "equitable tolling," and/or "equitable estoppel" apply to his claims under the Texas Labor Code. Drew's live pleading does not allege or make specific reference to the "discovery rule," "equitable tolling," and/or "equitable estoppel." However, even if the Court were to find that Drew's pleading gave adequate notice of his intention to rely on one or more of these theories, they do not apply.

33.    When sitting in diversity (as the Court is for purposes of Drew's Texas Labor Code claim), "federal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations." *Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 742-743 (W.D. Tex. 2015) (quoting *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011)). Under Texas law,

"equitable tolling is a 'sparingly' used doctrine." *Hand v. Stevens Transp., Inc. Employee Benefit Plan*, 83 S.W.3d 286, 293 (Tex. App.—Dallas 2002, no pet.) (quoting *Irwin v. Dep't of Veterans Avairs*, 498 U.S. 89, 96 (1990)). For example, "courts will apply the equitable tolling doctrine in misidentification cases where applying the statute of limitations would not serve its legitimate purpose." *Torres v. Johnson*, 91 S.W.3d 905, 909 (Tex. App.—Fort Worth 2002, no pet.). The "purpose of statutes of limitations is to compel the assertion of claims within a reasonable period so that the opposite party has a fair opportunity to defend while witnesses are available and the evidence if fresh in their minds." *Id.* at 908 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)).

34.     In Texas, "the discovery rule" may delay accrual or toll limitations, and applies "on a categorical basis to injuries that are both inherently undiscoverable and objectively verifiable." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). Similar to federal precedent, "fraudulent concealment is a fact-specific equitable doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence." *Id.* at 229 (citing *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011)). "The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry which, if pursued, would lead to the discovery of the concealed cause of action." *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1982). "Knowledge of such facts is in law equivalent to knowledge of the cause of action." *Id.*

**8.     The Discovery Rule, Equitable Tolling, and Equitable Estoppel Do Not Apply.**

35.     Even if Drew had pled sufficient facts to put McGriff on notice of his intent to rely on the "discovery rule," "equitable tolling," and "equitable estoppel," his claims remain untimely in light of the authority cited above. Under Texas law, the 180-day limitations period "begins to run when the employee is informed of the allegedly discriminatory employment decision." *Ajayi*

*v. Walgreen Co.*, 562 F. App'x 243, 246 (5th Cir. 2014) (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996)). Just as it is "well established in this circuit that in age discrimination cases the limitations period begins to run when the plaintiff knows of the discriminatory *act*, not when he first perceives the discriminatory motive . . . Texas courts of appeals have adopted this position." *Ajayi*, 562 F. App'x at 246 (citing *Ogletree v. Glen Rose Indep. Sch. Dist.*, 314 S.W.3d 450, 455 (Tex. App.—Waco 2010, pet. denied); *Acosta v. Memorial Hermann Hosp. Sys.*, No. 14-07-00001-CV, 2008 WL 198852, at *4 (Tex. App.—Houston [14th Dist.] Jan. 22, 2008, pet. denied); *Abbott v. Rankin*, No. 06-07-00149-CV, 2008 WL 5156453, at *3 (Tex. App—Texarkana Dec. 10, 2008, pet. denied)).

36.     Drew knew that he was at least age 40 when McGriff made the decision in 2008 to not offer him a discretionary forgivable loan. Drew knew that McGriff did not offer him a forgivable loan in 2008, and Drew knew the size of his book of business. Those are the ***only*** facts he needed to know to be on notice of his potential cause of action for age discrimination. His injury was not "inherently undiscoverable," meaning that the discovery rule does not apply. McGriff did not "conceal the conduct complained of," meaning that equitable tolling does not apply. The fact that Drew did not learn of McGriff's alleged discriminatory motive, whether because the motive was inherently undiscoverable or because of obfuscatory reasons alleged to have been articulated by McGriff in response to Drew's attempts to learn McGriff's motive, is immaterial as a matter of law. As such, the discovery rule, equitable tolling, and/or equitable estoppel, even if properly pleaded, do not overcome McGriff's affirmative defenses of limitations and failure to exhaust administrative remedies on his Texas Labor Code claims.

### 9.     There Is No Texas Equivalent to the Ledbetter Act.

37.     The Texas Supreme Court has made clear that the Lilly Ledbetter Fair Pay Act is not incorporated by reference into the Texas Labor Code. *Prairie View A & M Univ. v. Chatha*,

381 S.W.3d 500, 507-508 (Tex. 2012) (explaining, in the specific context of the Ledbetter Act, that the "general purposes provision" of the Texas Commission on Human Rights Act, which states that one of the purposes of the TCHRA is to provide for the "execution of the policies of Title VII . . . and its subsequent amendments" does ***not*** mean that all amendments are automatically incorporated into the TCHRA). *See, e.g.*, *Blasingame v. Eli Lilly and Co.*, No. H-11-4522, 2013 WL 5705234, at *5 (S.D. Tex. Oct. 18, 2013) (citing *Chatha* and holding that the Lilly Ledbetter Fair Pay Act "does not act to extend the time for filing claims under the TCHRA"). Accordingly, for purposes of Drew's age discrimination claim asserted under the Texas Labor Code, Drew's time for filing a charge of discrimination arising out of McGriff's 2008 decision not to offer him a forgivable producer loan expired 300 days after that discrete act occurred.

### 10. Drew Has Suffered No Compensable Damages.

38.     Beginning in 2005 and continuing to the present, Drew – unlike any other McGriff Producer – has received full credit allocations on all of his "book," and did not split those allocations with other Producers who worked on those accounts. By virtue of this special compensation plan, Drew has received over this period of time approximately an extra $1.4 million dollars that he would not have otherwise received. This amount is greater than any amount of a forgivable loan that Drew would have received if McGriff had selected him to participate in the forgivable loan portion of the Program. Drew would not have received both the special compensation plan *and* been selected to participate in the forgivable loan portion of the Program. Therefore, Drew has not suffered any compensable damages under the Texas Labor Code.

11.    **The Court Is Not Empowered to Award Damages.**

IF AND ONLY TO THE EXTENT THE COURT FINDS THAT DREW DID PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT AGE DISCRIMINATION WAS A "MOTIVATING FACTOR" IN McGRIFF'S 2008 DECISION TO NOT OFFER DREW A LOAN, McGRIFF REQUESTS THE FOLLOWING CONCLUSION OF LAW.

39.    Under the Texas Labor Code, "in a complaint in which the complainant proves a violation under Subsection (a)," *i.e.*, proves that age or another impermissible consideration was motivating factor for an employment practice, "and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court may grant declaratory relief, injunctive relief except as otherwise provided by this subsection, and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a complaint under Subsection (a), *but may not award damages or issue an order requiring an admission, reinstatement, hiring, promotion, or back pay.*" Tex. Lab. Code § 21.215(b) (emphasis added). Having found that McGriff would have taken the same action, *i.e.*, declining to offer Drew a forgivable loan under the Program in 2008, in the absence of age as a "motivating factor," the Court may not award damages, including back pay, to Drew.

11.    **Applicable Law:  Attorneys' Fees.**

40.    Drew seeks an award of attorneys' fees for McGriff's alleged Texas Labor Code violation. The Texas Labor Code specifically authorizes awards of attorneys' fees:  "in a proceeding under this chapter, a court may allow a prevailing party, other than [the Texas Workforce Commission], a reasonable attorney fee as part of the costs." Tex. Lab. Code § 21.259(a).

12.    **Drew Is Not Entitled to Attorneys' Fees.**

41.    Drew has failed to prove that age discrimination was a "motivating factor" for McGriff's 2008 decision not to award him a discretionary for givable loan. He therefore has not

prevailed on his claim and is not entitled to a judgment in any amount. The Court is without authority to award attorneys' fees, and declines to do so. However, McGriff is the prevailing party and is entitled to recover and hereby awarded its taxable court costs.

Respectfully submitted,

By: /s/ Gary D. Eisenstat
    Gary D. Eisenstat
    Texas State Bar No. 06503200
    gary.eisenstat@ogletree.com
    John M. Barcus
    Texas State Bar No. 24036815
    john.barcus@ogletree.com
    **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
    Preston Commons West
    8117 Preston Road, Suite 500
    Dallas, Texas  75225
    (214) 987-3800
    (214) 987-3927 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2023, the foregoing document was filed using the Court's electronic filing system, which will send notification of such filing to all counsel of record.

/s/ Gary D. Eisenstat
Gary D. Eisenstat