*EXHIBIT 4*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PETER BARBARA and JOHN DREW,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:22-CV-03340** |
| **MCGRIFF INSURANCE SERVICES,** | § | |
| **INC.,** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF JOHN DREW'S PROPOSED CONCLUSIONS OF LAW

Plaintiff John Drew files these Proposed Conclusions of Law and respectfully shows the Court the following:

### 1. Jurisdiction

The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1332, as well as 29 U.S.C. § 1367.

### 2. The ADEA and Texas Labor Code Chapter 21

a. The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to "fail or refuse to hire or discharge any individual with respect to his compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a).

b. A plaintiff proceeding under the ADEA must prove that he was "within the protected class," i.e., age 40 or older; qualified for the position he held; suffered an adverse employment decision; and was treated less favorably than similarly situated younger employees." *Leal v. McHugh*, 731 F.3d 405, 410-411 (5th Cir. 2015).

c. To prevail on a cause of action for violation of 29 U.S.C. § 623(a)(1), "a plaintiff must prove

1

that age was the 'but-for' cause of the employer's adverse action." *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

d.  Attorneys' fees under the ADEA are only available to a plaintiff who is a "prevailing party." *Tyler v. Union Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002).

e.  Under the Texas Labor Code (the "Code"), "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Lab. Code § 21.051.

f.  Under the Code, an "unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age or disability was a motivating factor for an employment practice, even if other factors also motivated the practice[.]" Tex. Lab. Code § 21.125(a). "Motivating factor" means that the employee's age was "a reason for making the decision at the time it was made." *Dallas County Sheriff's Dep't v. Gilley*, 114 S.W.3d 689, 693 (Tex. App.—Dallas 2003, no pet.). *See also Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) (in gender discrimination case, "in saying that gender played a *motivating part* in an employment decision, we mean that, if we asked the employer *at the moment of the decision what its reasons were* and if we received a truthful response, one of those reasons would be that the applicant or employee was a woman").

3.  **Limitations**

a.  The Lilly Ledbetter Fair Pay Act amended the ADEA to read, in pertinent part:

> For purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this chapter, when a

discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

29 U.S.C.A. § 626(d)(3).

b.   Therefore, each time a person is "affected by application of a discriminatory compensation decision or other practice" including when "wages, benefits, or other compensation is paid," the cause of action renews. *See id.*

c.   The Ledbetter Act does not apply to "discrete acts" such as "termination, failure to promote, denial of transfer, and refusal to hire." *Niwayama v. Tex. Tech Univ.*, 590 Fed. Appx. 351, 356 (5th Cir. 2014). Rather, the "discrimination in compensation" means "paying different wages or providing different benefits to similarly situated employees . . . ." *Id.* (quoting *Daniels v. United Parcel Serv., Inc.,* 701 F.3d 620, 630–31 (10th Cir. 2012)); *see also Noel v. Boeing Co.*, 622 F.3d 266, 275 (3d Cir. 2010) (distinguishing between a failure to receive a raise from failing to receive a promotion, which is a discrete act.).

d.   McGriff's decision to repeatedly exclude Drew from the Program from 2008 through the present day is precisely the kind of direct discrimination in compensation that is covered by the Ledbetter Act. This is not the case where a discrete act, like failure to promote, termination, or refusal to hire, led to lower pay. Rather, McGriff committed discrimination in compensation against Drew based upon his age by repeatedly refusing to provide him compensation under the Program but providing it to others who were younger but similarly situated (*i.e.* those eligible under the Program).

e.   McGriff's own corporate representative testified he did not know of anything that would have precluded Drew from participating in the Program in the same years as Marc Boots, who was a

3

younger employee given a loan under the Program in 2008, 2009, 2014, 2016, 2018, 2019, 2020, 2021, and 2023. McGriff's corporate representative also testified he did not know of any reason why Drew was not included in the Program other than his age and agreed every time Drew was not made a part of the Program, other people younger than him were, which, of course, caused his compensation to be less than those younger participants. Thus, every time McGriff paid these other similarly situated but younger employees pursuant to the Program, but not Drew, Drew's discrimination claim renewed.

f.    The Promissory Note Drew signed in May 2016 for the loan he finally received indicated he would be paid in five $10,000.00 installments through May 1, 2021. These installments were approximately $1/10^{th}$ of what he should have received, and other younger Producers did receive, pursuant to the Program formula. Therefore, Drew was subjected to age discrimination through at least May 2021, which is well within 180 days of September 2021, when he filed his EEOC/TWC Charge of Discrimination.

g.    There is no language in the ADEA, as amended by the Ledbetter Act, that limits the amount of damages that can be sought based upon a "look back" theory. *See generally* 29 U.S.C.A. § 626. Therefore, Drew is not limited to seeking back pay only in the 180 days preceding the filing of his charge. *See United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 11 (2008) (There is a "strong presumption that the plain language of the statute expresses congressional intent . . . .") (internal quotations omitted); *Mehmen v. Collin Cnty., Tex.*, 558 F. Supp. 2d 711, 715 (E.D. Tex. 2007) ("The plain language of the statute must be the court's North Star."); *McMellon v. United States*, 387 F.3d 329, 339 (4th Cir. 2004) ("The Supreme Court has repeatedly explained that the plain language of a statute is the best evidence of Congressional intent.").

h.    Equitable tolling and/or equitable estoppel toll any limitations period until 2021.

i.   Federal law governs the pleading requirements of this case; therefore, Drew was only required to, and did, plead sufficient facts to put McGriff on notice of the reliance on tolling theories.

j.   When a case is removed to federal court, federal law governs procedural requirements, including pleading requirements. *Simpson v. James*, 903 F.2d 372, 375 (5th Cir. 1990); *Hudnall v. Tex.*, No. EP-22-CV-36-KC-RFC, 2022 WL 3219423, at *11 (W.D. Tex. Aug. 9, 2022) (noting that a federal court hearing state law claims under diversity or supplemental jurisdiction shall apply state substantive law and federal procedural law.). Therefore, the pleading requirements for both of Drew's claims for age discrimination under the ADEA and Chapter 21 of the Texas Labor Code are governed by federal law.

k.   Federal law mandates that a plaintiff need only plead sufficient facts to put the defense on notice of the reliance on a tolling theory. *Colonial Penn Ins. Co. v. Mkt. Planners Ins. Agency, Inc.*, 1 F.3d 374, 376 (5th Cir. 1993). For example, in *Ray v. Lynass*, the Western District of Texas recently held that the facts pleaded gave sufficient notice of the reliance on the discovery rule where the plaintiff alleged that the defendant made representations that he had the knowledge, skill, and experience to greatly expand plaintiff's business yet failed to do so when he was supposed to contact prospective customers but failed to convert any leads. No. 1:21-CV-0020-DH, 2023 WL 7238682, at *8 (W.D. Tex. Nov. 2, 2023). Similarly, the Fifth Circuit held sufficient facts were alleged to show reliance on the discovery rule and fraudulent concealment where the plaintiff's allegations included a statement that the defendant breached its duty as an agent as a fiduciary by "failing to disclose all material information with respect to the sale of [plaintiff's p]olicies and the premiums arising from those sales, and by failing to account for money received by [defendant] on behalf of plaintiff [.]" *Colonial Penn Ins. Co.*, 1 F.3d at 376, 378, n.2 (5th Cir. 1993).

l.  Drew alleged ample facts to put McGriff on notice of his reliance on equitable estoppel and equitable tolling.   Specifically, the Original Petition alleges that McGriff's provided explanations for its refusal to include the Plaintiffs in the Program were "false and, when called on those falsities, [McGriff] simply came up with more inaccurate justifications for the employees' wrongful exclusions from the program." *See Pet. at ¶ 6*.  Drew again provides notice of his reliance on a tolling theory in paragraph 19 by further detailing the erroneous justifications provided to him by McGriff for his exclusion in the program.   *See Pet. at ¶ 19*.  Drew also alleges he did not find out about McGriff's justifications being false until 2021, when he and Plaintiff Peter Barbara began discussing the Program and inquiring about their exclusion. *See Pet. at ¶¶ 13, 19*.  McGriff's corporate representative was asked if he knew of any inaccuracies in Paragraph 13 of the Petition.  He testified he did not.  Therefore, Drew provided sufficient evidence to put McGriff on notice of his reliance on equitable estoppel and equitable tolling.

m.  McGriff should be estopped from relying upon a limitations defense due to its continued concealment and misrepresentation of facts to lull Drew into failing to timely file a charge of discrimination.

n.  Filing of a timely charge of discrimination with the EEOC or TWC is not a jurisdictional prerequisite to suit. *See Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 553 (5th Cir. 2020) ("[W]e conclude § 21.202's 180-day filing deadline, although mandatory, is not jurisdictional."); *Granger v. Aaron's, Inc.*, 636 F.3d 708, 711 (5th Cir. 2011) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite . . . .").  As such, like statute of limitations, filing a charge of discrimination is subject to waiver, estoppel, equitable tolling or the discovery rule. *Granger*, 636 F.3d at 711.

o.  Equitable estoppel prevents a defendant from asserting that a discrimination charge was untimely as a defense where the defendant concealed facts or misled the plaintiff thereby causing the plaintiff to not assert his rights within the limitations period. *See Rhodes v. Guiberson Oil Tools Div.,* 927 F.2d 878-79 (5th Cir. 1991); *see also Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1280 (5th Cir. 1986)* ("An employer's misrepresentations or wrongful concealment of facts necessary to support a discrimination charge have given rise to estoppel where they prevented an employee from asserting his rights timely."). "An essential element of equitable estoppel is that the party asserting must have reasonably relied on the statement or the conduct of the party sought to be estopped." *Tomlin v. Signal Intern.*, No. 1:11-CV-3, 2012 WL 3984517, at *5 (E.D. Tex. Aug. 9, 2012).

p.  In *Rhodes v. Guiberson Oil Tools Div.,* the 56-year-old plaintiff received notice he was being discharged from his job with defendant because of a reduction in work force on October 15, 1986. *Rhodes,* 927 F.2d at 877. His last day on the job was October 31, 1986. *Id.* On or about December 19, 1986, the plaintiff discovered that four days earlier, defendant had hired a 42-year-old to replace him. *Id.* Plaintiff filed a charge with the EEOC on April 28, 1987, 195 days after he received notice of his termination. *Id.* The Fifth Circuit held that equitable estoppel applied as the plaintiff did not learn of his age discrimination claim until he found out he was replaced by a younger man as the defendant concealed facts and misled him by stating he was being terminated due to a reduction in work force. *Id.* at 880-82.

q.  Here, McGriff has similarly concealed and misstated facts to lull Drew into not approaching the EEOC or TWC sooner. When McGriff communicated the retention tools available to Drew, it left out any mention of the Program despite the Program being included in a memorandum regarding "Producer Retention" just two months earlier. *See Exhibits C and D.* When Drew

7

tried, over and over again, to get to the bottom of why he had not been put in the Program, McGriff responded falsely. First, its CFO indicated participation "would come along later." It didn't, so Drew approached the Chairman/CEO and the President for McGriff Texas and was told by both of them that he was included in Book Equity, rather than the Program, and that was better for him. It wasn't, and the assertion couldn't have possibly been true, as many Producers participated in both Book Equity and the Program. McGriff's corporate representative, Mr. Hodo, also confirmed he himself, despite not knowing of any other reason why Drew was excluded from the Program other than age, and being told by the CEO of McGriff's Texas division that Drew was not included because of his age, never told Drew that he was not included in the Program due to his age prior to 2021. Additionally, when Drew was given $50,000.00 in 2016 -- a mere fraction of what he was entitled to under the Program but for his age -- he was told by Mr. Hodo that $50,000.00 is better than nothing and Drew understood he would never receive anything else. Only then did Drew cease to inquire about the program.

r.  McGriff's corporate representative testified he was not sure what else Drew could have done to act diligently to find out why he was excluded from the Program when the CEO had told him it was because he was getting Book Equity.

s.  The Promissory Note Drew signed related to the loan indicated he would be paid in five $10,000 installments through May 1, 2021. These installments were approximately 1/10th of what he should have received, and other younger Producers did receive, pursuant to the Program formula. Therefore, even if the Court chose not to toll limitations, Drew was subjected to age discrimination through at least May 2021, which is well within 180 days of September 2021, when he filed his EEOC/TWC Charge of Discrimination. Even in the absence of the Lilly

Ledbetter Act – which brings Drew's Charge within the limitations period – these events demonstrate Drew was subjected to discrimination within the requisite charge-filing period.

t.   Drew pursued every avenue he could to diligently pursue his rights.  As McGriff's corporate representative recognized numerous times in his deposition, Drew followed up on multiple occasions and exercised diligence and acted reasonably throughout the years in trying to figure out why he was not included in the Program.  In fact, Mr. Hodo testified he was not sure what else Drew could have done to act diligently to find out why he was excluded from the Program.  Thus, similar to the plaintiff in *Rhodes*, Drew had no reason to suspect the reason he was not a part of the Program was due to his age until he discovered McGriff had concealed relevant facts and was actively misleading him in 2021.  Accordingly, McGriff should not be allowed to take advantage of its misrepresentations and should be estopped from alleging Drew failed to timely file his discrimination charge.

u.   Even if McGriff was not estopped from asserting a limitations defense, Drew's claims were tolled until 2021 under equitable tolling as Drew was unaware of the facts giving rise to his claim because of McGriff's intentional concealment and misrepresentation of same.

v.   Equitable tolling tolls limitations during the plaintiff's excusable ignorance and is committed to the sound discretion of the judge. *Champlin v. Manpower Inc.*, No. 4:16-CV-00421, 2018 WL 572997, at *4 (S.D. Tex. Jan. 24, 2018).  For equitable tolling to apply, a plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. (quoting *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016)).

w.   The Fifth Circuit has recognized at least three bases for equitable tolling: the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise

9

to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights. *Granger*, 636 F.3d at 712.

x.    Equitable tolling is to be applied in cases "where purposeful misrepresentations misled a party or where a party could not have vindicated its rights even by exercising due diligence." *Hull v. Emerson Motors/Nidec*, 532 Fed. Appx. 586, 588 (5th Cir. 2013). In pleading equitable tolling, "[a] plaintiff need not prove intentional misconduct by the employer, but must demonstrate that 'the defendant's conduct, innocent or not, reasonably induced the plaintiff to not file suit within the limitations period.'" *Boudreau v. Nokia of Am. Corp.*, No. 3:19-CV-01623-E, 2020 WL 7426155, at *5 (N.D. Tex. Dec. 18, 2020) (quoting *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 391 (5th Cir. 2002)).

y.    Texas law similarly tolls limitations pursuant to fraudulent concealment when a plaintiff proves "an underlying wrong, and that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *Gallier v. Woodbury Fin. Services, Inc.*, 171 F.Supp.3d 552, 563 (S.D. Tex. 2016) (internal quotations omitted). Fraudulent concealment is fact-specific and "tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). Indeed, as the Texas Supreme Court noted, "accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

z.    This case is riddled with instances of McGriff intentionally misrepresenting the reason for denying Drew's participation in the Program. As detailed above, McGriff completely omitted the Program in its communications with Drew even though the Program was included in a memorandum regarding "Producer Retention" just two months earlier. In addition, Drew was

10

told multiple times that he was getting a better deal through Book Equity, rather than Program participation, when in reality membership in both was not mutually exclusive. The list of Program participants is littered with Producers who also received Book Equity. Nor was Drew ever told prior to 2021 that he was not included because of his age, despite McGriff's corporate representative having known since 2012-2015 that that was the very reason for his exclusion. Rather, Drew was told when he received the $50,000.00 loan that that was better than nothing and that was all he would ever be eligible for. Additionally, Drew inquired on multiple occasions about the refusal to include him in the Program and, as McGriff's corporate representative recognized, exercised diligence and acted reasonably throughout the years in trying to figure out why he was not included. Based on these events, there is no conceivable way Drew could have known of all the facts to support his claim due to McGriff's continuous misrepresentations and concealment until he learned in 2021 that McGriff failed to include him and Peter Barbara in the Program due to their age. *See Boudreau*, 2020 WL 7426155, at *5 (denying motion to dismiss as sufficient facts were alleged regarding equitable tolling where it was not until a younger male with less management experience was hired that the plaintiff learned of the facts necessary to support her discrimination charge as the former employer previously misrepresented to plaintiff that she did not receive the promotion due to her lack of management experience.).

Mr. Hodo testified he wouldn't fault Drew for not filing any sort of discrimination claim at the time Drew was told he wasn't in the Program because he purportedly got a better deal by way of Book Equity.

aa. Federal Rule of Civil Procedure 8(c) requires a defendant to affirmatively plead a limitations defense. FED. R. CIV. P. 8(c) ("In responding to a pleading, a party must affirmatively state any

11

avoidance or affirmative defense, including ... statute of limitations … .”); *see also Razo v. State Farm Lloyds*, No. 7:17-CV-00352, 2017 WL 6209608, at *2 (S.D. Tex. Dec. 8, 2017) (“Rule 8(c) requires a defendant to affirmatively plead its limitations defense, and thus the general rule is that such a failure constitutes waiver of the defense.”).  Thus, a limitations defense, such as the failure to exhaust administrative remedies by not timely filing a charge, “is an affirmative defense that should be pleaded.” *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 308 (5th Cir. 2018), *aff’d*, 139 S. Ct. 1843 (2019); *see also Thomas v. Dallas Indep. Sch. Dist.*, No. 3:22-CV-2685-G-BN, 2023 WL 4687225, at *3 (N.D. Tex. May 31, 2023) (citing same rule for claims that included an ADEA claim); *Johnson v. San Jacinto Coll.*, No. 4:20-CV-2948, 2021 WL 40323, at *2 (S.D. Tex. Jan. 5, 2021) (Texas law similarly holds that § 21.202 “creates a statute of limitations defense to a TCHRA claim when the administrative charge is not filed within 180 days of the act alleged to be an unlawful employment practice.”).  The Fifth Circuit, however, has recognized that failure to raise an affirmative defense under Rule 8(c) in a party’s first responsive pleading is not fatal if the defense is raised “at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.” *Allied Chem. Corp. v. Mackay,* 695 F.2d 854, 856 (5th Cir.1983).  “Unfair surprise and prejudice are central concerns underlying the requirement that a defendant timely plead affirmative defenses.” *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 402 (5th Cir. 2014).

bb.  McGriff contends Drew missed his charge-filing deadline.  However, McGriff failed to plead this defense in any live pleading.  It has been more than a year since McGriff filed its Answer in this case and it has failed to raise any affirmative defenses despite having an opportunity to do so prior to removing this case as well as during the 21-day period it was allowed to do so as a matter of course under the Federal Rules. FED. R. CIV. P. 81(c).

**4.  Attorneys' Fees and Damages**

a.  Drew seeks recovery of reasonable and necessary attorneys' fees and costs pursuant to §
    21.259 of the Texas Labor Code as well as 29 U.S.C. § 216(b).

b.  In assessing the reasonableness of fees sought by Drew in this lawsuit, courts apply the two-step
    method required by the Fifth Circuit.  First, the 'lodestar' is determined by multiplying the
    number of hours reasonably spent on the litigation times a reasonable hourly billing rate.
    *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  Once the number of reasonable hours is
    established, those hours are "then multiplied by the selected hourly rate to produce the 'lodestar.'"
    *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990).  In determining the reasonable hourly
    rate, courts dictate that "an appropriate hourly rate" must be selected "based on prevailing
    community standards for attorneys of similar experience in similar cases."  *Blum v. Stenson*, 465
    U.S. 886, 896 n. 11, 104 S.Ct. 1541 (1984); *Alberti*, 896 F.2d at 930.  The second step in
    assessing attorneys' fees requires application of various factors identified by courts within the
    Fifth Circuit to determine what amount is warranted.  The lodestar may be adjusted up or down
    if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.  The
    Fifth Circuit has identified twelve factors – often referred to as the *Johnson* factors -- a district
    court should be guided by: (1) the time and labor required; (2) the novelty and difficulty of the
    issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion
    of other employment by the attorney due to acceptance of the case; (5) the customary fee charged
    for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time
    limitations imposed by the client or the circumstances; (8) the amount involved and the results
    obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of
    the case; (11) the nature and length of the professional relationship with the client; and (12)

awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th

Cir. 1974). Many of the *Johnson* factors are usually subsumed within the initial calculation of

hours reasonably expended at a reasonable hourly rate.  In fact, the lodestar may not be adjusted

due to a *Johnson* factor if the lodestar calculation already took that factor into account.  *Watkins*

*v. Input/Output, Inc.*, 531 F. Supp. 777, 784 (S.D. Tex. 2007).

c.    Drew is more than 40 years of age.

d.    McGriff has more than 500 employees.

e.    Drew was qualified to be included in the Program.

f.    Drew suffered an adverse employment action by not being included in the Program.

g.    McGriff employees who are outside the protected age class were treated more favorably than
      Drew by being included in the Program.

h.    McGriff intentionally discriminated against Drew.

i.    Drew's age was a motivating factor in, and/or but for cause of, McGriff's decision to exclude
      him from the Program.

j.    McGriff's stated reasons for excluding Drew are false and pretext for age discrimination.

k.    As a result of McGriff's intentional unlawful actions, it violated Chapter 21 of the Texas Labor
      Code and the Age Discrimination in Employment Act when it discriminated against Drew
      because of his age.

l.    As a direct and proximate result of the conduct of McGriff, Drew has suffered injury.

m.    For the injuries Drew has suffered, he seeks compensatory and consequential damages.

n.    Because McGriff acted with malice or reckless indifference to Drew's state-protected
      rights, he is also entitled to punitive damages.  See Tex. Lab. Code § 21.2585.

o.    Because McGriff acted willfully, Drew is also entitled to liquidated damages.  *See* 29

U.S.C. § 626(b).

p.    An Employer acts willfully when it "knew or showed reckless disregard' for whether the ADEA

prohibited its conduct."  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 615 (1993).

q.    Drew is entitled to recover all applicable pre- and post-judgment interest.

r.    Any propositions of fact identified by Plaintiff that the Court concludes are more accurately

considered propositions of law.

Respectfully submitted,

**GRAY REED**

By:

Jay Aldis
Texas State Bar No. 00785656
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7175
Fax: (713) 986-7100
jaldis@grayreed.com

**ATTORNEYS FOR PLAINTIFF
JOHN DREW**

4878-9748-3673.1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 28th day of December 2023, a copy of the foregoing document

was served on counsel of record by the Court's electronic filing system.

_____

Jay Aldis

4878-9748-3673.1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PETER BARBARA and JOHN DREW, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:22-CV-03340 |
| MCGRIFF INSURANCE SERVICES, | § | |
| INC., | § | |
| | § | |
| *Defendant.* | § | |

### PLAINTIFF JOHN DREW'S PROPOSED CONCLUSIONS OF LAW

Plaintiff John Drew files these Proposed Conclusions of Law and respectfully shows the Court the following:

1.  **Jurisdiction**

The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1332, as well as 29 U.S.C. § 1367.

2.  **The ADEA and Texas Labor Code Chapter 21**

a.  The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to "fail or refuse to hire or discharge any individual with respect to his compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a).

b.  A plaintiff proceeding under the ADEA must prove that he was "within the protected class," i.e., age 40 or older; qualified for the position he held; suffered an adverse employment decision; and was treated less favorably than similarly situated younger employees." *Leal v. McHugh*, 731 F.3d 405, 410-411 (5th Cir. 2015).

c.  To prevail on a cause of action for violation of 29 U.S.C. § 623(a)(1), "a plaintiff must prove

1

that age was the 'but-for' cause of the employer's adverse action." *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

d.  Attorneys' fees under the ADEA are only available to a plaintiff who is a "prevailing party." *Tyler v. Union Co. of Cal.*, 304 F.3d 379, 404 (5th Cir. 2002).

e.  Under the Texas Labor Code (the "Code"), "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." Tex. Lab. Code § 21.051.

f.  Under the Code, an "unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age or disability was a motivating factor for an employment practice, even if other factors also motivated the practice[.]" Tex. Lab. Code § 21.125(a). "Motivating factor" means that the employee's age was "a reason for making the decision at the time it was made." *Dallas County Sheriff's Dep't v. Gilley*, 114 S.W.3d 689, 693 (Tex. App.—Dallas 2003, no pet.). *See also Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) (in gender discrimination case, "in saying that gender played a *motivating part* in an employment decision, we mean that, if we asked the employer *at the moment of the decision what its reasons were* and if we received a truthful response, one of those reasons would be that the applicant or employee was a woman").

3.  **Limitations**

a.  The Lilly Ledbetter Fair Pay Act amended the ADEA to read, in pertinent part:

> For purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this chapter, when a

2

discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

29 U.S.C.A. § 626(d)(3).

b.   Therefore, each time a person is "affected by application of a discriminatory compensation decision or other practice" including when "wages, benefits, or other compensation is paid," the cause of action renews. *See id.*

c.   The Ledbetter Act does not apply to "discrete acts" such as "termination, failure to promote, denial of transfer, and refusal to hire." *Niwayama v. Tex. Tech Univ.*, 590 Fed. Appx. 351, 356 (5th Cir. 2014).  Rather, the "discrimination in compensation" means "paying different wages or providing different benefits to similarly situated employees . . . ." *Id.* (quoting *Daniels v. United Parcel Serv., Inc.,* 701 F.3d 620, 630–31 (10th Cir. 2012)); *see also Noel v. Boeing Co.*, 622 F.3d 266, 275 (3d Cir. 2010) (distinguishing between a failure to receive a raise from failing to receive a promotion, which is a discrete act.).

d.   McGriff's decision to repeatedly exclude Drew from the Program from 2008 through the present day is precisely the kind of direct discrimination in compensation that is covered by the Ledbetter Act.  This is not the case where a discrete act, like failure to promote, termination, or refusal to hire, led to lower pay.  Rather, McGriff committed discrimination in compensation against Drew based upon his age by repeatedly refusing to provide him compensation under the Program but providing it to others who were younger but similarly situated (*i.e.* those eligible under the Program).

e.   McGriff's own corporate representative testified he did not know of anything that would have precluded Drew from participating in the Program in the same years as Marc Boots, who was a

3

younger employee given a loan under the Program in 2008, 2009, 2014, 2016, 2018, 2019, 2020, 2021, and 2023. McGriff's corporate representative also testified he did not know of any reason why Drew was not included in the Program other than his age and agreed every time Drew was not made a part of the Program, other people younger than him were, which, of course, caused his compensation to be less than those younger participants. Thus, every time McGriff paid these other similarly situated but younger employees pursuant to the Program, but not Drew, Drew's discrimination claim renewed.

f.  The Promissory Note Drew signed in May 2016 for the loan he finally received indicated he would be paid in five $10,000.00 installments through May 1, 2021. These installments were approximately $1/10^{th}$ of what he should have received, and other younger Producers did receive, pursuant to the Program formula. Therefore, Drew was subjected to age discrimination through at least May 2021, which is well within 180 days of September 2021, when he filed his EEOC/TWC Charge of Discrimination.

g.  There is no language in the ADEA, as amended by the Ledbetter Act, that limits the amount of damages that can be sought based upon a "look back" theory. *See generally* 29 U.S.C.A. § 626. Therefore, Drew is not limited to seeking back pay only in the 180 days preceding the filing of his charge. *See United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 11 (2008) (There is a "strong presumption that the plain language of the statute expresses congressional intent . . . .") (internal quotations omitted); *Mehmen v. Collin Cnty., Tex.*, 558 F. Supp. 2d 711, 715 (E.D. Tex. 2007) ("The plain language of the statute must be the court's North Star."); *McMellon v. United States*, 387 F.3d 329, 339 (4th Cir. 2004) ("The Supreme Court has repeatedly explained that the plain language of a statute is the best evidence of Congressional intent.").

h.  Equitable tolling and/or equitable estoppel toll any limitations period until 2021.

i.  Federal law governs the pleading requirements of this case; therefore, Drew was only required to, and did, plead sufficient facts to put McGriff on notice of the reliance on tolling theories.

j.  When a case is removed to federal court, federal law governs procedural requirements, including pleading requirements. *Simpson v. James*, 903 F.2d 372, 375 (5th Cir. 1990); *Hudnall v. Tex.*, No. EP-22-CV-36-KC-RFC, 2022 WL 3219423, at *11 (W.D. Tex. Aug. 9, 2022) (noting that a federal court hearing state law claims under diversity or supplemental jurisdiction shall apply state substantive law and federal procedural law.). Therefore, the pleading requirements for both of Drew's claims for age discrimination under the ADEA and Chapter 21 of the Texas Labor Code are governed by federal law.

k.  Federal law mandates that a plaintiff need only plead sufficient facts to put the defense on notice of the reliance on a tolling theory. *Colonial Penn Ins. Co. v. Mkt. Planners Ins. Agency, Inc.*, 1 F.3d 374, 376 (5th Cir. 1993). For example, in *Ray v. Lynass*, the Western District of Texas recently held that the facts pleaded gave sufficient notice of the reliance on the discovery rule where the plaintiff alleged that the defendant made representations that he had the knowledge, skill, and experience to greatly expand plaintiff's business yet failed to do so when he was supposed to contact prospective customers but failed to convert any leads. No. 1:21-CV-0020-DH, 2023 WL 7238682, at *8 (W.D. Tex. Nov. 2, 2023). Similarly, the Fifth Circuit held sufficient facts were alleged to show reliance on the discovery rule and fraudulent concealment where the plaintiff's allegations included a statement that the defendant breached its duty as an agent as a fiduciary by "failing to disclose all material information with respect to the sale of [plaintiff's p]olicies and the premiums arising from those sales, and by failing to account for money received by [defendant] on behalf of plaintiff [.]" *Colonial Penn Ins. Co.*, 1 F.3d at 376, 378, n.2 (5th Cir. 1993).

4878-9748-3673.1

l.   Drew alleged ample facts to put McGriff on notice of his reliance on equitable estoppel and equitable tolling.   Specifically, the Original Petition alleges that McGriff's provided explanations for its refusal to include the Plaintiffs in the Program were "false and, when called on those falsities, [McGriff] simply came up with more inaccurate justifications for the employees' wrongful exclusions from the program." *See Pet. at ¶ 6*.  Drew again provides notice of his reliance on a tolling theory in paragraph 19 by further detailing the erroneous justifications provided to him by McGriff for his exclusion in the program.  *See Pet. at ¶ 19*.  Drew also alleges he did not find out about McGriff's justifications being false until 2021, when he and Plaintiff Peter Barbara began discussing the Program and inquiring about their exclusion. *See Pet. at ¶¶ 13, 19*.  McGriff's corporate representative was asked if he knew of any inaccuracies in Paragraph 13 of the Petition.  He testified he did not.  Therefore, Drew provided sufficient evidence to put McGriff on notice of his reliance on equitable estoppel and equitable tolling.

m.  McGriff should be estopped from relying upon a limitations defense due to its continued concealment and misrepresentation of facts to lull Drew into failing to timely file a charge of discrimination.

n.   Filing of a timely charge of discrimination with the EEOC or TWC is not a jurisdictional prerequisite to suit. *See Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 553 (5th Cir. 2020) ("[W]e conclude § 21.202's 180-day filing deadline, although mandatory, is not jurisdictional."); *Granger v. Aaron's, Inc.*, 636 F.3d 708, 711 (5th Cir. 2011) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite . . . .").  As such, like statute of limitations, filing a charge of discrimination is subject to waiver, estoppel, equitable tolling or the discovery rule. *Granger*, 636 F.3d at 711.

6

o.  Equitable estoppel prevents a defendant from asserting that a discrimination charge was untimely as a defense where the defendant concealed facts or misled the plaintiff thereby causing the plaintiff to not assert his rights within the limitations period. *See Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 878-79 (5th Cir. 1991); *see also Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1280 (5th Cir. 1986) ("An employer's misrepresentations or wrongful concealment of facts necessary to support a discrimination charge have given rise to estoppel where they prevented an employee from asserting his rights timely."). "An essential element of equitable estoppel is that the party asserting must have reasonably relied on the statement or the conduct of the party sought to be estopped." *Tomlin v. Signal Intern.*, No. 1:11-CV-3, 2012 WL 3984517, at *5 (E.D. Tex. Aug. 9, 2012).

p.  In *Rhodes v. Guiberson Oil Tools Div.*, the 56-year-old plaintiff received notice he was being discharged from his job with defendant because of a reduction in work force on October 15, 1986. *Rhodes*, 927 F.2d at 877. His last day on the job was October 31, 1986. *Id.* On or about December 19, 1986, the plaintiff discovered that four days earlier, defendant had hired a 42-year-old to replace him. *Id.* Plaintiff filed a charge with the EEOC on April 28, 1987, 195 days after he received notice of his termination. *Id.* The Fifth Circuit held that equitable estoppel applied as the plaintiff did not learn of his age discrimination claim until he found out he was replaced by a younger man as the defendant concealed facts and misled him by stating he was being terminated due to a reduction in work force. *Id.* at 880-82.

q.  Here, McGriff has similarly concealed and misstated facts to lull Drew into not approaching the EEOC or TWC sooner. When McGriff communicated the retention tools available to Drew, it left out any mention of the Program despite the Program being included in a memorandum regarding "Producer Retention" just two months earlier. *See Exhibits C and D*. When Drew

7

tried, over and over again, to get to the bottom of why he had not been put in the Program, McGriff responded falsely. First, its CFO indicated participation "would come along later." It didn't, so Drew approached the Chairman/CEO and the President for McGriff Texas and was told by both of them that he was included in Book Equity, rather than the Program, and that was better for him. It wasn't, and the assertion couldn't have possibly been true, as many Producers participated in both Book Equity and the Program. McGriff's corporate representative, Mr. Hodo, also confirmed he himself, despite not knowing of any other reason why Drew was excluded from the Program other than age, and being told by the CEO of McGriff's Texas division that Drew was not included because of his age, never told Drew that he was not included in the Program due to his age prior to 2021. Additionally, when Drew was given $50,000.00 in 2016 -- a mere fraction of what he was entitled to under the Program but for his age -- he was told by Mr. Hodo that $50,000.00 is better than nothing and Drew understood he would never receive anything else. Only then did Drew cease to inquire about the program.

r.  McGriff's corporate representative testified he was not sure what else Drew could have done to act diligently to find out why he was excluded from the Program when the CEO had told him it was because he was getting Book Equity.

s.  The Promissory Note Drew signed related to the loan indicated he would be paid in five $10,000 installments through May 1, 2021. These installments were approximately 1/10[th] of what he should have received, and other younger Producers did receive, pursuant to the Program formula. Therefore, even if the Court chose not to toll limitations, Drew was subjected to age discrimination through at least May 2021, which is well within 180 days of September 2021, when he filed his EEOC/TWC Charge of Discrimination. Even in the absence of the Lilly

Ledbetter Act -- which brings Drew's Charge within the limitations period -- these events demonstrate Drew was subjected to discrimination within the requisite charge-filing period.

t. Drew pursued every avenue he could to diligently pursue his rights. As McGriff's corporate representative recognized numerous times in his deposition, Drew followed up on multiple occasions and exercised diligence and acted reasonably throughout the years in trying to figure out why he was not included in the Program. In fact, Mr. Hodo testified he was not sure what else Drew could have done to act diligently to find out why he was excluded from the Program. Thus, similar to the plaintiff in *Rhodes*, Drew had no reason to suspect the reason he was not a part of the Program was due to his age until he discovered McGriff had concealed relevant facts and was actively misleading him in 2021. Accordingly, McGriff should not be allowed to take advantage of its misrepresentations and should be estopped from alleging Drew failed to timely file his discrimination charge.

u. Even if McGriff was not estopped from asserting a limitations defense, Drew's claims were tolled until 2021 under equitable tolling as Drew was unaware of the facts giving rise to his claim because of McGriff's intentional concealment and misrepresentation of same.

v. Equitable tolling tolls limitations during the plaintiff's excusable ignorance and is committed to the sound discretion of the judge. *Champlin v. Manpower Inc.*, No. 4:16-CV-00421, 2018 WL 572997, at *4 (S.D. Tex. Jan. 24, 2018). For equitable tolling to apply, a plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016)).

w. The Fifth Circuit has recognized at least three bases for equitable tolling: the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise

9

to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights. *Granger*, 636 F.3d at 712.

x.    Equitable tolling is to be applied in cases "where purposeful misrepresentations misled a party or where a party could not have vindicated its rights even by exercising due diligence." *Hull v. Emerson Motors/Nidec*, 532 Fed. Appx. 586, 588 (5th Cir. 2013). In pleading equitable tolling, "[a] plaintiff need not prove intentional misconduct by the employer, but must demonstrate that 'the defendant's conduct, innocent or not, reasonably induced the plaintiff to not file suit within the limitations period.'" *Boudreau v. Nokia of Am. Corp.*, No. 3:19-CV-01623-E, 2020 WL 7426155, at *5 (N.D. Tex. Dec. 18, 2020) (quoting *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 391 (5th Cir. 2002)).

y.    Texas law similarly tolls limitations pursuant to fraudulent concealment when a plaintiff proves "an underlying wrong, and that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *Gallier v. Woodbury Fin. Services, Inc.*, 171 F.Supp.3d 552, 563 (S.D. Tex. 2016) (internal quotations omitted). Fraudulent concealment is fact-specific and "tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). Indeed, as the Texas Supreme Court noted, "accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

z.    This case is riddled with instances of McGriff intentionally misrepresenting the reason for denying Drew's participation in the Program. As detailed above, McGriff completely omitted the Program in its communications with Drew even though the Program was included in a memorandum regarding "Producer Retention" just two months earlier. In addition, Drew was

told multiple times that he was getting a better deal through Book Equity, rather than Program participation, when in reality membership in both was not mutually exclusive.  The list of Program participants is littered with Producers who also received Book Equity.  Nor was Drew ever told prior to 2021 that he was not included because of his age, despite McGriff's corporate representative having known since 2012-2015 that that was the very reason for his exclusion.  Rather, Drew was told when he received the $50,000.00 loan that that was better than nothing and that was all he would ever be eligible for.  Additionally, Drew inquired on multiple occasions about the refusal to include him in the Program and, as McGriff's corporate representative recognized, exercised diligence and acted reasonably throughout the years in trying to figure out why he was not included.  Based on these events, there is no conceivable way Drew could have known of all the facts to support his claim due to McGriff's continuous misrepresentations and concealment until he learned in 2021 that McGriff failed to include him and Peter Barbara in the Program due to their age. *See Boudreau*, 2020 WL 7426155, at *5 (denying motion to dismiss as sufficient facts were alleged regarding equitable tolling where it was not until a younger male with less management experience was hired that the plaintiff learned of the facts necessary to support her discrimination charge as the former employer previously misrepresented to plaintiff that she did not receive the promotion due to her lack of management experience.).

Mr. Hodo testified he wouldn't fault Drew for not filing any sort of discrimination claim at the time Drew was told he wasn't in the Program because he purportedly got a better deal by way of Book Equity.

aa. Federal Rule of Civil Procedure 8(c) requires a defendant to affirmatively plead a limitations defense. FED. R. CIV. P. 8(c) ("In responding to a pleading, a party must affirmatively state any

avoidance or affirmative defense, including ... statute of limitations ... ."); *see also Razo v. State Farm Lloyds*, No. 7:17-CV-00352, 2017 WL 6209608, at *2 (S.D. Tex. Dec. 8, 2017) ("Rule 8(c) requires a defendant to affirmatively plead its limitations defense, and thus the general rule is that such a failure constitutes waiver of the defense."). Thus, a limitations defense, such as the failure to exhaust administrative remedies by not timely filing a charge, "is an affirmative defense that should be pleaded." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 308 (5th Cir. 2018), *aff'd*, 139 S. Ct. 1843 (2019); *see also Thomas v. Dallas Indep. Sch. Dist.*, No. 3:22-CV-2685-G-BN, 2023 WL 4687225, at *3 (N.D. Tex. May 31, 2023) (citing same rule for claims that included an ADEA claim); *Johnson v. San Jacinto Coll.*, No. 4:20-CV-2948, 2021 WL 40323, at *2 (S.D. Tex. Jan. 5, 2021) (Texas law similarly holds that § 21.202 "creates a statute of limitations defense to a TCHRA claim when the administrative charge is not filed within 180 days of the act alleged to be an unlawful employment practice."). The Fifth Circuit, however, has recognized that failure to raise an affirmative defense under Rule 8(c) in a party's first responsive pleading is not fatal if the defense is raised "at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Allied Chem. Corp. v. Mackay,* 695 F.2d 854, 856 (5th Cir.1983). "Unfair surprise and prejudice are central concerns underlying the requirement that a defendant timely plead affirmative defenses." *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 402 (5th Cir. 2014).

bb. McGriff contends Drew missed his charge-filing deadline. However, McGriff failed to plead this defense in any live pleading. It has been more than a year since McGriff filed its Answer in this case and it has failed to raise any affirmative defenses despite having an opportunity to do so prior to removing this case as well as during the 21-day period it was allowed to do so as a matter of course under the Federal Rules. FED. R. CIV. P. 81(c).

12

4. **Attorneys' Fees and Damages**

a.   Drew seeks recovery of reasonable and necessary attorneys' fees and costs pursuant to § 21.259 of the Texas Labor Code as well as 29 U.S.C. § 216(b).

b.   In assessing the reasonableness of fees sought by Drew in this lawsuit, courts apply the two-step method required by the Fifth Circuit. First, the 'lodestar' is determined by multiplying the number of hours reasonably spent on the litigation times a reasonable hourly billing rate. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Once the number of reasonable hours is established, those hours are "then multiplied by the selected hourly rate to produce the 'lodestar.'" *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990). In determining the reasonable hourly rate, courts dictate that "an appropriate hourly rate" must be selected "based on prevailing community standards for attorneys of similar experience in similar cases." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541 (1984); *Alberti*, 896 F.2d at 930. The second step in assessing attorneys' fees requires application of various factors identified by courts within the Fifth Circuit to determine what amount is warranted. The lodestar may be adjusted up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. The Fifth Circuit has identified twelve factors – often referred to as the *Johnson* factors -- a district court should be guided by: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12)

13

awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Many of the *Johnson* factors are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. In fact, the lodestar may not be adjusted due to a *Johnson* factor if the lodestar calculation already took that factor into account. *Watkins v. Input/Output, Inc.*, 531 F. Supp. 777, 784 (S.D. Tex. 2007).

c.  Drew is more than 40 years of age.

d.  McGriff has more than 500 employees.

e.  Drew was qualified to be included in the Program.

f.  Drew suffered an adverse employment action by not being included in the Program.

g.  McGriff employees who are outside the protected age class were treated more favorably than Drew by being included in the Program.

h.  McGriff intentionally discriminated against Drew.

i.  Drew's age was a motivating factor in, and/or but for cause of, McGriff's decision to exclude him from the Program.

j.  McGriff's stated reasons for excluding Drew are false and pretext for age discrimination.

k.  As a result of McGriff's intentional unlawful actions, it violated Chapter 21 of the Texas Labor Code and the Age Discrimination in Employment Act when it discriminated against Drew because of his age.

l.  As a direct and proximate result of the conduct of McGriff, Drew has suffered injury.

m.  For the injuries Drew has suffered, he seeks compensatory and consequential damages.

n.  Because McGriff acted with malice or reckless indifference to Drew's state-protected rights, he is also entitled to punitive damages. See Tex. Lab. Code § 21.2585.

o.  Because McGriff acted willfully, Drew is also entitled to liquidated damages. *See* 29

14

U.S.C. § 626(b).

p.    An Employer acts willfully when it "knew or showed reckless disregard' for whether the ADEA prohibited its conduct." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 615 (1993).

q.    Drew is entitled to recover all applicable pre- and post-judgment interest.

r.    Any propositions of fact identified by Plaintiff that the Court concludes are more accurately considered propositions of law.

Respectfully submitted,

**GRAY REED**

By: _____

Jay Aldis
Texas State Bar No. 00785656
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7175
Fax: (713) 986-7100
jaldis@grayreed.com

**ATTORNEYS FOR PLAINTIFF
JOHN DREW**

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of December 2023, a copy of the foregoing document was served on counsel of record by the Court's electronic filing system.

_____
Jay Aldis