Case 4:22-cv-03340   Document 45   Filed on 03/13/24 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
March 13, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DREW, | § | |
| *Plaintiff,* | § § § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-3340 |
| MCGRIFF INSURANCE SERVICES, INC., | § § § § | |
| *Defendant.* | § | |

## ORDER

Pending before the Court is Defendant McGriff Insurance Services, Inc.'s ("Defendant" or "McGriff") motion for leave to file amended answer (Doc. No. 13) and motion for summary judgment (Doc. No. 29). Plaintiff John Drew ("Plaintiff" or "Drew") filed responses thereto (Doc. Nos. 17, 30), and McGriff replied. (Doc. Nos. 19, 31). Drew also filed a sur-reply to the summary judgment motion. (Doc. No. 32). Having considered the briefing, summary judgment evidence, and applicable law, the Court hereby GRANTS McGriff's motion for leave to file an amended answer (Doc. No. 13) and GRANTS McGriff's motion for summary judgment. (Doc. No. 29).

### I.     Background

This case involves allegations of age-based discrimination against Drew by his employer, McGriff, a large insurance business. Drew joined McGriff's Dallas office as a "Producer" in 2002. In 2004, Drew headed the Dallas office, where he oversaw all of the Dallas-based producers, and was responsible for recruiting new talent and retaining the existing producers.

In 2008, McGriff formally announced a new producer compensation program (the "Program") with several components, including the new forgivable producer loans at issue here.

Drew was 65 years old at the time. (Doc. No. 29-1, at 91). Under this component of the Program, once a producer reached a certain threshold based upon the size of his or her "book of business," the Producer became eligible to participate in the Program. McGriff would give the producer a forgivable loan, the amount of which was correlated to the size of the producer's "book of business." At a book size of $1 million, the producer would be eligible for a $200,000 loan. At each increase of $500k in book size, the producer would be eligible for an additional $100K loan. For example, a producer with a book size of $3.2 million would be eligible for a loan of up to $600K.[1] (Doc. No. 29, Ex. B). According to McGriff, one key point of the program was that "not every producer eligible for a loan [would] receive a loan." (*Id.*). Each loan was evidenced by a promissory note. If the producer met certain criteria, including continued employment, the loan would be forgiven at the rate of 10% per year over the next ten years. Several years later, McGriff reduced the forgiveness period to between five and seven years.

Drew learned about the Program when it was announced in 2008. At that time, he was not selected for participation in the Program and did not receive a forgivable loan. It is undisputed that in 2008, Drew's book of business exceeded the $1 million threshold. Drew testified that his book size was $2.7 million, which would permit him to receive a loan of up to $500K. He repeatedly complained to McGriff's senior management team about his not being selected to receive the forgivable loan. Each time, Drew was told that he had not been and would not be selected to participate in the forgivable loan aspect of the Program. Drew concedes that no one mentioned his age in these conversations, though there does not appear to be any evidence of any other reason given by McGriff for its failure to select Drew.

---

[1] This example is taken from McGriff's 2008 memorandum announcing the Program. (Doc. No. 29, Ex. B).

In 2015, Drew was still concerned about McGriff's failure to include him in the forgivable loan Program. He flew down to Houston to discuss the Program with Tommy Ebner—the CEO for McGriff Texas. Ebner told Drew that Drew's inclusion in "Book Equity" rather than inclusion in the loan Program, was what Ebner thought was best for Drew.[2] After this meeting with Drew, Ebner sent an email to CFO Tommy Lambers with a subject line "john Drew." The email stated:

> John is following up on the meeting we (he and I) had in the summer about not getting a loan like the others, still in the game supporting company, having great years in new etc. You and I discussed what we might be able to do as a one off and deferred discussion etc. John has followed up today and I just told him it was "on the list." Please put this on your Christmas/year end list as well. Thanks.

(Doc. No. 30, Ex. F).

Lambert responded with some suggestions (none of which included offering Drew full participation in the loan Program) and on April 18, 2016, Lambert send Drew an email regarding the Program. The email stated that Drew had been selected to receive a producer loan; however, the loan amount was only $50,000. (*Id.*). This was a fraction of the loan amount promised to others by the Program. Disappointed, but accepting that $50,000 was probably all he would receive from the Program, Drew "ceased any further efforts to be included in the program." (Doc. No. 30, at 12). The $50,000 loan was to be paid in five installments through May 1, 2021. (Doc. No. 32, at 2).

In 2021, Drew spoke with another employee who had not received a forgivable loan, and came to the conclusion that his non-inclusion in the program was likely due to his age. Accordingly, in September of 2021, Drew filed his first and only Charge of Discrimination with the EEOC alleging age discrimination based upon McGriff's decision to exclude him from the Program. On August 11, 2022, Drew then initiated this lawsuit in Texas state court alleging

---

[2] The record contains limited evidence on this "Book Equity" program and there is no explanation as to why it might have been more beneficial for Drew than the forgivable loan program.

3

violations of the Age Discrimination in Employment Act ("ADEA") and the Texas Labor Code. McGriff filed a general denial on September 19, 2022, and then promptly removed the case.

On July 6, 2023, nearly eleven months after the case was first filed, McGriff filed a motion for leave to file its first amended answer. (Doc. No. 13). This amended answer would replace the general denial on file and would include affirmative defenses, including statute of limitations and failure to exhaust administrative remedies. Several months later, on November 14, 2023, McGriff filed its motion for summary judgment (Doc. No. 29). These two motions are currently pending before the Court.

According to the record, Drew remains employed by McGriff as an Executive Vice President and Producer as of the time that the above motions were filed.

## II.  Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary

4

judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara*, 353 F.3d at 405. It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III.     Analysis

As an initial matter, this Court must decide whether to grant McGriff leave to file its First Amended Answer, which was filed July of 2023. (Doc. No. 13). This amended answer would replace McGriff's general denial that is currently on file from before this case was removed to federal court. Importantly, the proposed amended answer would also introduce new affirmative defenses—statute of limitations and failure to exhaust.

These defenses are key to this case because the timing of Plaintiff's filing presents the central issue on summary judgment. That is because the ADEA and Texas Labor Code both impose a requirement for plaintiffs to exhaust their administrative remedies by timely filing a charge of discrimination with the proper agency.

Section 626(d)(1) of the ADEA provides that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed (A) within 180 days after the alleged unlawful practice occurred; or (B) in a case to which section 633(b) of this title applies,[3] within 300 days after the alleged unlawful practice occurred[.]" 29 U.S.C. §

---

[3] This refers to "dual-filing" states like Texas.

626(d)(1)(A)-(B). So, under the ADEA, Drew had 300 days from the occurrence of a discriminatory act to file a charge.

Similarly, Section 21.201 of the Texas Labor Code also requires the filing of a "written complaint"—Texas' statutory language for what is commonly referred to as a charge of discrimination—and further provides that, except with respect to sexual harassment complaints, "a complaint under this subchapter must be filed not later than the 180th day after the alleged unlawful employment practice occurred." Tex. Lab. Code § 21.202 (titled "Statute of Limitations"). The Texas Labor Code does not have an expanded definition of "occurrence" for compensation discrimination claims. Indeed, the Texas Labor Code does not define "occurrence" at all. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 506-507 (Tex. 2012). Case law provides that an "occurrence" happens, and the limitations period begins to run, when the employee is informed of the allegedly discriminatory employment decision. *Id.* (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996)).

The complaint is to be filed with the Texas Workforce Commission, and by law, "the commission shall dismiss an untimely complaint." *Id.* The Fifth Circuit has held that this 180-day filing deadline, while not jurisdictional, is "mandatory." *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 553 (5th Cir. 2020). Thus, failure to timely satisfy the administrative-exhaustion requirement bars recovery and warrants dismissal of any civil action not preceded by a timely written complaint. *Id.* at 552, 555.

*A. Failure to Plead Statute of Limitations or Exhaustion Defense*

Considering that the key issue on summary judgment is whether Drew timely exhausted his administrative remedies, the Court must decide whether McGriff's failure to plead a statute of

limitations or exhaustion defense constitutes a waiver of this requirement, and if so, whether to permit McGriff to amend its answer.

In his summary judgment response, Drew argues that McGriff failed to plead any limitations or exhaustion defense and therefore has waived the issue. Drew contends that Rule 8(c) of the Federal Rules of Civil Procedure requires a defendant to affirmatively plead a limitations/exhaustion defense. Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations . . ."); *see also Razo v. State Farm Lloyds*, No. 7:17-CV-00352, 2017 WL 6209608, at *2 (S.D. Tex. Dec. 8, 2017) ("Rule 8(c) requires a defendant to affirmatively plead its limitations defense, and thus the general rule is that such a failure constitutes waiver of the defense."). Drew argues that because McGriff did not file for leave to amend its answer until nearly eleven months after the original petition was filed, McGriff has waived the exhaustion requirement. Drew, therefore, urges the Court to deny McGriff's motion for leave to amend.

By contrast, McGriff urges the Court to grant it leave to amend its answer because Drew has not been prejudiced by a delay and has been on notice since July that McGriff intended to rely on this defense. Additionally, McGriff appears to argue that even without an affirmative defense in its pleadings, McGriff should still win summary judgment on the timing issue because the lawsuit was filed thirteen years after any damage was incurred.

Thus, the Court must determine (1) whether the administrative exhaustion is an affirmative defense that must be pled or else is waived, and (2) whether McGriff has waived the defense or adequately preserved it by filing for leave to amend in July of 2023.

First, the Court agrees with Drew that administrative exhaustion is an affirmative defense that must be pled. When examining Title VII's analogous administrative exhaustion requirement,

7

the Fifth Circuit stated that "[f]ailure to exhaust is an **affirmative defense that should be pleaded**." *Davis v. Fort Bend Cnty.*, 893 F.3d 300 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 204 L. Ed. 2d 116 (2019) (emphasis added); *see also Flagg v. Stryker Corp.*, 819 F.3d 132, 142 (5th Cir. 2016) (en banc) (Haynes, J., concurring) ("Absent a jurisdictional nature to 'failure to exhaust,' we treat such failures to exhaust as affirmative defenses, not jurisdictional prerequisites."). In *Davis*, the Fifth Circuit found that the defendant had waived the issue of administrative exhaustion because it "waited five years and an entire round of appeals all the way to the Supreme Court before it argued that [the plaintiff] failed to exhaust. On these facts, it is abundantly clear that [the defendant] has forfeited its opportunity to assert this claim." *Davis*, 893 F.3d at 307. Therefore, the Court finds that the administrative exhaustion at issue here is an affirmative defense can be waived if not adequately pleaded or otherwise preserved.

Despite this general conclusion, however, the Court finds that McGriff has not waived the exhaustion defense and hereby grants McGriff's motion for leave to amend its answer (Doc. No. 13). There are several reasons for this ruling. First, this case is clearly distinguishable from *Davis* above. In *Davis*, the defendant never raised the issue of exhaustion at the district court, instead choosing to only raise the issue on appeal five years later. By contrast, here, McGriff raised the defense before the close of discovery and before the dispositive motion deadline.

Additionally, there is no surprise, prejudice, or delay in granting McGriff's motion for leave to amend. *See Morgan v. Chapman*, 969 F.2d 238, 248 (5th Cir. 2020) (courts should freely grant leave to amend absent a "substantial reason" for denial, like surprise or prejudice); *Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015) (delay can be considered prejudicial, but only if it would hinder the opposing party's ability to respond to the proposed

8

amendment or to prepare for trial). While Drew argues that he would need additional discovery on the limitations/exhaustion defense, Drew was able to conduct discovery, including depositions, after the July filing. He had notice of the proposed affirmative defenses at that time and could have conducted discovery accordingly. Moreover, Drew was able to fully brief the issue of exhaustion in his response to summary judgment. Accordingly, the Court hereby GRANTS McGriff's motion for leave to amend its answer. (Doc. No. 13). Finally, the facts at issue date back to 2008, and Drew was and is well aware of them. Additional discovery would not change this.

As such, McGriff pleaded its affirmative defenses that Drew failed to timely exhaust his administrative remedies and that the statute of limitations has run. (Doc. No. 13-2 at 5). The Court will therefore consider the merits of these defenses.

B. *Timeliness of Drew's EEOC Charge*

As noted above, Drew filed his charge with the EEOC in September of 2021 alleging age-based discrimination. Thus, the traditional lookback period would encompass any discriminatory act within 300 or 180 days of September 9, 2021 (essentially, earlier in 2021 and the end of 2020). Drew contends that his filing with the EEOC is timely under the Lilly Ledbetter Fair Pay Act ("the Ledbetter Act") because McGriff's discrimination in compensation taints every payment Drew could and should have received, making each failure to provide Drew compensation an unlawful act. McGriff disagrees, and contends that the Ledbetter Act is inapplicable because the alleged discrimination here is a ***one-time*** harm (not receiving a ~$500,000 loan in 2008) rather than the typical compensation discrimination (involving paying different wages or providing different benefits to similarly situated employees).

The Ledbetter Act amended the ADEA to read:

> For purposes of this section, an unlawful practice occurs, with respect to discrimination in compensation in violation of this chapter, when a discriminatory

9

> compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

29 U.S.C.A. § 629(d)(3). Thus, each time a person is "affected by application of a discriminatory compensation decision or other practice," the cause of action renews or resets.

The Ledbetter Act does not apply to "discrete acts" such as "termination, failure to promote, denial or transfer, and refusal to hire." *Niwayama v. Tex. Tech Univ.*, 590 Fed. App'x. 351, 356 (5th Cir. 2014); *See Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1181 (10th Cir. 2011) (holding that "hiring, firing, promotion, demotion, and transfer decisions, though often touching on pay, should and do accrue" as soon as the employee is aware of the decision); *See also Lohrasbi v. Bd. of Trustees of the Univ. of Illinois*, 147 F. Supp. 3d 746 (C.D. Ill. 2015) ("Unlike the further issuance of paychecks based on a discriminatory compensation system, which are subsequent affirmative discriminatory acts taken by the employer, the denial of emeritus status, though related to compensation, is a singular, discrete action. Therefore, the 300-day time-limit does not restart each day that Plaintiff is deprived of Professor Emiritus status.").

The Court finds that here, denial of a forgivable loan from the Program, though related to compensation, is a singular discrete action. While Drew contends that his discrimination continued through May 1, 2021 (the date of the last installment of his $50,000 loan), this was the last installment of a loan amount made to Drew in 2016. In 2016 Drew was aware that he would only be receiving 1/10th of the loan amount he claims that he should have received pursuant to the program. Thus, the discriminatory act of giving him a mere 1/10th may be traced to the specific day he received the email regarding the $50,000 amount from McGriff executives. Because the denial of the full loan amount was a singular, discrete action, the Ledbetter Act is inapplicable.

10

Hence, Plaintiff's cause of action did not renew "every time McGriff paid . . . other similarly situated but younger employees pursuant to the Program" as he argues. (Doc. No. 30 at 14).

The Fifth Circuit has addressed a similar timing issue related to the continuing violation doctrine. *Henson v. Bell Helicopter Textron, Inc.*, 128 Fed. App'x 387, 391 (5th Cir. 2005). There, the Circuit discussed the continuing violation doctrine, under which "a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Henson*, 128 Fed. App'x at 391 (5th Cir.2005) (citing *Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002)). A continuing violation "involves repeated conduct," and "cannot be said to occur on any particular day." *Id.* It instead "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). When the employer's conduct consists of a series of "discrete discriminatory acts," the fact that one or more falls within the actionable time period does not save related claims that would otherwise be time-barred. *Id.*

The continuing violation doctrine does not apply when "the relevant discriminatory actions alleged in the complaint '[are] the sort[s] of discrete and salient event[s] that should put an employee on notice that a cause of action has accrued.'" *Windhauser v. Bd. of Supervisors for Louisiana State Univ. & Agr. & Mech. Coll.*, 360 Fed. App'x 562, 566 (5th Cir. 2010) (quoting *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998)) (alteration in original).

After examining the briefing and summary judgment evidence, the Court agrees with McGriff that the alleged discriminatory act—denying Plaintiff participation in the forgivable loan Program—was a discrete act that cannot be brought into Plaintiff's actionable period by the continuing violation doctrine or the Ledbetter Act. When the program was introduced in 2008,

Drew was 65 years old, and thus was age-protected under both the ADEA and Sections 21.051 and 21.001 of the Texas Labor Code. While the denial occurred multiple times, each instance was a "discriminatory act" that would have been actionable on its own. There are specific dates in the record in which Drew was told that he would not qualify for participation. For example, in 2016, Drew received a $50,000 forgivable loan that was a fraction of the loan amount promised by the Program. Giving Drew this smaller sized loan was a discrete act, occurring on a specific day, that could have been an actionable discriminatory act. Even using this 2016 date, which is the *last* date of discrimination alleged, Drew's September 2021 charge is still untimely as it was brought five years after the employment decision.

Moreover, because the discriminatory act alleged in Drew's 2021 EEOC charge occurred in 2008 (2016 at the latest), the Court finds that Drew failed to comply with the exhaustion requirement because the charge was not filed within 300 days of the employment practice. Stated differently, applying the 300-day lookback period would not bring in the alleged discriminatory act. Accordingly, McGriff's motion for summary judgment (Doc. No. 29) is hereby GRANTED because the claims are administratively barred as being untimely.

### C. Applicability of Equitable Estoppel and Equitable Tolling

Notwithstanding the above, Drew contends that McGriff should be estopped from relying upon a limitations/exhaustion defense due to its "continued concealment and misrepresentation of facts to lull Drew into failing to timely file a charge of discrimination." (Doc. No. 30 at 17).

Drew argues that like statute of limitations, filing a charge of discrimination is subject to waiver, estoppel, equitable tolling or the discovery rule. *Granger v. Aaron's, Inc.*, 636 F.3d 708, 711 (5th Cir. 2011). Equitable estoppel prevents a defendant from asserting that a discrimination charge was untimely as a defense where the defendant concealed facts or misled the plaintiff

12

thereby causing the plaintiff to not assert his rights within the limitations period. *See Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 878–79 (5th Cir. 1991); *see also Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1280 (5th Cir. 1986) ("An employer's misrepresentations or wrongful concealment of facts necessary to support a discrimination charge have given rise to estoppel where they prevented an employee from asserting his rights timely."). "An essential element of equitable estoppel is that the party asserting must have reasonably relied on the statement or the conduct of the party sought to be estopped." *Tomlin v. Signal Intern.*, No. 1:11-CV-3, 2012 WL 3984517, at *5 (E.D. Tex. Aug. 9, 2012).

Drew similarly argues that equitable tolling should apply "Equitable tolling is to be applied sparingly." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003) (quoting *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). As the plaintiff, Drew bears the burden of demonstrating that equitable tolling should apply. *Manning*, 332 F.3d at 880. "Equitable tolling is appropriate if the defendants concealed facts relating to their wrongdoing, which prevented the plaintiffs from learning the facts necessary to pursue their claims within the limitations period." *Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 652 (S.D. Tex. 2011) (citing *Manning*) (emphasis added). The Fifth Circuit has explained that the difference between equitable tolling and equitable estoppel is the following: "Equitable tolling focuses on the plaintiff's excusable ignorance of the employer's discriminatory act. Equitable estoppel, in contrast, examines the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights." *Rhodes*, 927 F.2d at 878 (quoting *Felty v. Graves–Humphreys, Co.*, 785 F.2d 516, 519 (4th Cir.1986)).

While the Court is sympathetic to Drew's position and understands that he might not have suspected the worst in his colleagues, there is no evidence that McGriff concealed or misconstrued facts regarding Drews' denial into the program. For years, starting in 2008, Drew followed up and

13

tried to get a forgivable loan, and for years McGriff refused. While McGriff employees may have dodged the question or offered excuses, the facts remain that McGriff *never selected Drew for the Program*, and he knew that he was not selected. Therefore, despite McGriff's failure to give a reason for its refusal to consider him, McGriff's alleged "wrongdoing" was apparent each year that Drew continued to grow his book of business and did not receive a forgivable loan.

Other than McGriff's allegedly discriminatory *reasoning*, Drew has put forward no *specific concealed facts* that prevented him from learning facts necessary to pursue his claim earlier. From the record, it does not appear that anything changed in Drew's position from 2016 to 2021 or that any new information was uncovered. He was continuously denied access to the program from 2008 until the filing of this lawsuit. These are the "facts necessary to pursue [his] claim" today, and these facts were known or ascertainable by Drew the first time he was not given a loan while his colleagues were.

As such, equitable tolling and equitable estoppel do not apply here, and Drew's claim remains administratively barred. Drew did not need to know about the discriminatory motive in order to know the "facts necessary to pursue his claims." The case law is clear that "[t]he date of the discriminatory act controls, not some later date when the employee discovers the act is discriminatory." *Abbott v. Rankin*, No. 06-07-00149-CV, 2008 WL 5156453, at *3 (Tex. App.—Texarkana Dec. 10, 2008, pet. denied) (emphasis added).

## IV.     Conclusion

Having considered the motions, summary judgment evidence, and applicable law, the Court hereby GRANTS McGriff's motion for summary judgment (Doc. No. 29). McGriff's motion for leave to file an amended answer (Doc. No. 13) is also granted. This matter is hereby dismissed with prejudice.

Signed at Houston, Texas, this **13** day of March, 2024.

Andrew S. Hanen
United States District Judge