United States District Court
Southern District of Texas
**ENTERED**
March 11, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN DREW, | § |
| | § |
| *Plaintiff,* | § |
| | § |
| v. | § CIVIL ACTION NO. 4:22-cv-3340 |
| | § |
| MCGRIFF INSURANCE SERVICES, INC., | § |
| | § |
| *Defendant.* | § |
| | § |

## ORDER DENYING MOTION FOR RECONSIDERATION

Pending before the Court is Plaintiff John Drew's ("Plaintiff" or "Drew") Motion for Reconsideration. (Doc. No. 47). Defendant McGriff Insurance Services, Inc.'s ("Defendant" or "McGriff") responded in opposition. (Doc. No. 50). Also before the Court is McGriff's Motion for a Bill of Costs against Drew, (Doc. No. 46), to which Drew responded in opposition, (Doc. No.48), and McGriff replied. (Doc. No. 49). Having considered the briefing and applicable law, the Court hereby **DENIES** Drew's Motion for Reconsideration, (Doc. No. 47), and **GRANTS** McGriff's motion for Bill of Costs. (Doc. No. 46).

### I.    Background

This case involves allegations of age discrimination against Drew by his employer, McGriff, a large insurance business. Drew joined McGriff's Dallas office as a "Producer" in 2002. In 2004, Drew headed the Dallas office, where he oversaw all of the Dallas-based producers, and was responsible for recruiting new talent and retaining the existing producers.

In 2008, McGriff formally announced a new producer compensation program (the "Program") with several components, including the new forgivable producer loans at issue here.

Drew was 65 years old at the time. (Doc. No. 29-1, at 91). Under the Program, once a producer reached a certain threshold based upon the size of his or her "book of business," the Producer becomes eligible to receive a forgivable loan, the amount of which was correlated to the size of the producer's "book of business." At a book size of $1 million, the producer would be eligible for a $200,000 loan. At each increase of $500k in book size, the producer would be eligible for an additional $100K loan. For example, a producer with a book size of $3.2 million would be eligible for a loan of up to $600K.[1] (Doc. No. 29, Ex. B).  According to McGriff, one key point of the program was that "not every producer eligible for a loan [would] receive a loan." (*Id.*). Each loan was evidenced by a promissory note. If the producer met certain criteria, including continued employment, the loan would be forgiven at the rate of 10% per year over the next ten years. Several years later, McGriff reduced the forgiveness period to between five and seven years.

Drew learned about the Program when it was announced in 2008. At that time, he was not selected for participation in the Program and did not receive a forgivable loan. It is undisputed that in 2008, Drew's book of business exceeded the $1 million threshold. Drew testified that his book size was $2.7 million, which would permit him to receive a loan of up to $500K. He repeatedly complained to McGriff's senior management team about his not being selected to receive the forgivable loan. Each time, Drew was told that he had not been and would not be selected to participate in the forgivable loan aspect of the Program. Drew concedes that no one mentioned his age in these conversations, though there does not appear to be any evidence of any other reason given by McGriff for its failure to select Drew.

In 2015, Drew was still concerned about McGriff's failure to include him in the forgivable loan Program. He flew down to Houston to discuss the Program with Tommy Ebner—the CEO

---

[1]     This example is taken from McGriff's 2008 memorandum announcing the Program. (Doc. No. 29, Ex. B).

for McGriff Texas. Ebner told Drew that Drew's inclusion in "Book Equity" rather than inclusion in the loan Program, was what Ebner thought was best for Drew.[2] After this meeting with Drew, Ebner sent an email to CFO Tommy Lambers with a subject line "john Drew." The email stated:

> John is following up on the meeting we (he and I) had in the summer about not getting a loan like the others, still in the game supporting company, having great years in new etc. You and I discussed what we might be able to do as a one off and deferred discussion etc. John has followed up today and I just told him it was "on the list." Please put this on your Christmas/year end list as well. Thanks.

(Doc. No. 30, Ex. F). Lambert responded with some suggestions (none of which included offering Drew full participation in the loan Program) and on April 18, 2016, Lambert send Drew an email regarding the Program. The email stated that Drew had been selected to receive a producer loan; however, the loan amount was only $50,000. (*Id.*). This was a fraction of the loan amount promised to others by the Program. Disappointed, but accepting that $50,000 was probably all he would receive from the Program, Drew "ceased any further efforts to be included in the program." (Doc. No. 30, at 12). The $50,000 loan was to be paid in five installments through May 1, 2021. (Doc. No. 32, at 2).

In 2021, Drew spoke with another employee who had not received a forgivable loan, and came to the conclusion that his non-inclusion in the program was likely due to his age. Accordingly, in September of 2021, Drew filed his first and only Charge of Discrimination with the EEOC alleging age discrimination based upon McGriff's decision to exclude him from the Program. On August 11, 2022, Drew then initiated this lawsuit in Texas state court alleging violations of the Age Discrimination in Employment Act ("ADEA") and the Texas Labor Code. McGriff filed a general denial on September 19, 2022, and then promptly removed the case.

---

[2] The record contains limited evidence on this "Book Equity" program and there is no explanation as to why it might have been more beneficial for Drew than the forgivable loan program.

On July 6, 2023, nearly eleven months after the case was first filed, McGriff filed a motion for leave to file its first amended answer. (Doc. No. 13). This amended answer would replace the general denial on file and would include affirmative defenses, including statute of limitations and failure to exhaust administrative remedies. Several months later, on November 14, 2023, McGriff filed its motion for summary judgment (Doc. No. 29).

The Court granted summary judgment in favor of McGriff based on the statute of limitations affirmative defense. (Doc. No. 45). Drew filed his charge with the EEOC in September of 2021 alleging age-based discrimination. Thus, the traditional lookback period would encompass any discriminatory act within 300 or 180 days of September 9, 2021 (essentially, earlier in 2021 and the end of 2020). Drew contended that his filing with the EEOC is timely under the Lilly Ledbetter Fair Pay Act ("the Ledbetter Act") because McGriff's discrimination in compensation taints every payment Drew could and should have received, making each failure to provide Drew compensation an unlawful act. McGriff disagreed, arguing that the Ledbetter Act is inapplicable because the alleged discrimination was a ***one-time*** harm (not receiving a ~$500,000 loan in 2008) rather than the typical compensation discrimination (involving paying different wages or providing different benefits to similarly situated employees).

Construing the Ledbetter Act, the Court found that here, denial of a forgivable loan from the Program, though related to compensation, is a singular discrete action. While Drew contended that his discrimination continued through May 1, 2021 (the date of the last installment of his $50,000 loan), this was the last installment of a loan amount made to Drew in 2016. In 2016 Drew was aware that he would only be receiving 1/10th of the loan amount he claims that he should have received pursuant to the program. Thus, the discriminatory act of giving him a mere 1/10th may be traced to the specific day he received the email regarding the $50,000 amount from McGriff

4

executives. Because the denial of the loan amount sought was a singular, discrete action, the Court

held that the Ledbetter Act was inapplicable.

## II.    Legal Standard

Rule 59(e) motions call into question the correctness of a judgment. *In re Transtexas Gas

Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). The Fifth Circuit has repeatedly held that Rule 59(e)

motions are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could

have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d

473, 479 (5th Cir. 2004); *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990). Instead,

such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or

fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th

Cir. 1989) (internal quotations omitted).

## III.    Analysis

### A. Drew's Motion to Reconsider

Drew's Motion to Reconsider restates the same arguments made at the summary judgment

stage and presents no newly discovered evidence. The evidence that Drew does point to was

considered in the Court's prior order, (Doc. No. 45), and was not relevant to the Court's ruling. As

such, the Motion for Reconsideration is **DENIED.**

In his motion, Drew raises essentially three arguments as a basis for this Court to reconsider

its ruling. First, Plaintiff argues that there was summary judgment evidence that the Court did not

address in its Order. (Doc. No. 47 at 2–3). Specifically, Drew points to several statements from

the Hodo Deposition to support the conclusion that McGriff truly did discriminate against Drew

based on his age. (*Id.* at 3). While the Court did, in fact, address several of the facts he references

from the Hodo Deposition, (Doc. No. 45 at 2), the facts raised by Drew are not particularly relevant

to the Court's ruling. The Court granted summary judgment because Drew's EEOC complaint was not timely filed and, therefore, his claim was barred. While the Court is certainly sympathetic to the fact that Drew may have suffered discrimination, the evidentiary support for that finding is immaterial to the Court's decision.

Second, Drew argues that the Court's interpretation of the Ledbetter Act was incorrect, and that the final disbursement of his forgivable loan *did* qualify as a continual, discriminatory compensation decision or practice. (*Id.* at 3). These arguments, however, are the same arguments raised in his summary judgment briefing. As stated above, motions for reconsideration are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990). Without newly discovered evidence or an intervening change in law, Drew's second argument must fail.

Third, and finally, Drew argues that based on his 2019 book of business, he should have qualified for a $500,000 loan, the disbursements for which would have occurred within 300 days of his EEOC filing. These loan forgiveness payments, Drew argues, would have constituted discriminatory acts that would render his charge of discrimination timely. There are two main issues with this argument. First, it provides no basis for the Court to reverse its interpretation of the Ledbetter Act without any persuasive reason to do so. Second, there is no evidence that Drew actually applied for the loan in 2019. In essence, Drew seems to be arguing that his EEOC charge was timely because, if he had applied and been granted the loan, there would have been payments made within 300 days of his filing. This is speculative at best, and Drew does not provide the Court with any evidence that he applied for, or even intended to apply for, another forgivable loan in 2019. As such, this argument also fails.

6

That being the case, the Court does not find that there are "manifest errors of law or fact" that must be corrected, or that there is "newly discovered evidence," the Court **DENIES** Drew's Motion for Reconsideration. (Doc. No. 47); *see Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (internal quotations omitted).

### B. Motion for Bill of Costs

Federal Rule of Civil Procedure 54(d)(1) provides that costs shall be awarded to a prevailing party unless the court otherwise directs. FED. R. CIV. P. 54(d). 28 U.S.C. § 1920 defines the "costs" courts may award as:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Whether something was "necessarily obtained for use in the case is a factual determination to be made by the district court." *Fogelman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). Prevailing parties bear the burden of establishing necessity. *Id.* Nonetheless, if the nonprevailing party does not object to a specific cost or fee, the Court will presume the cost is reasonable. *See, e.g., Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 384 (5th Cir. 2012) ("[T]here is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs."); *Interstate Contracting Corp. v. City of Dallas*, 2002 WL 236676, at *2 (N.D. Tex. Jan. 31, 2002) ("Plaintiff, as the prevailing party, is presumptively entitled to its costs and Defendant, as the non-prevailing party, bears the burden of overcoming the presumption.").

Here, McGriff moved for an award of taxable costs under 28 U.S.C. § 1920. Specifically, McGriff requested to following:

(1) $409.25 in connection with Fees of the Clerk;

(2) $6,568.50 in connection with Plaintiff's deposition;

(3) $1,212.30 in connection with the deposition of Christiana Bailey, Defendant's corporate representative; and

(4) $873.75 in connection with the deposition of Doug Hodo, Defendant's corporate representative.

(Doc. No. 46 at 2). McGriff supported these requests with a sworn declaration and several exhibits to prove up the costs. (Doc. No. 46-1). In response, Drew argues that the costs should be denied because: (1) McGriff failed to attach an affidavit with the motion; (2) McGriff was not entitled to fees for the deposition videographer; and (3) the Court should use its equitable discretion to deny costs because Drew did suffer age discrimination even if he did not prevail on summary judgment for procedural reasons. (Doc. No. 48 at 1–3).

The Court finds an award of costs to be appropriate. To start, McGriff's Motion for Bill of Costs included a declaration under the penalty of perjury that the representations were accurate, and the costs were necessary, (Doc. No. 46-1 at 2), which is expressly permitted by 28 U.S.C. § 1746.

Second, several courts within the Fifth Circuit have held that "[v]ideography fees are recoverable, but the party seeking costs for such fees must show that the videography services were necessarily obtained for use in the case." *McGowan v. S. Methodist Univ.*, No. 3:18-CV-00141-N, 2024 WL 3891358, at *5 (N.D. Tex. Aug. 20, 2024); *Bernardy v. Shriners Hosp. for Child., Inc.*, 2022 WL 1694184, at *3 (S.D. Tex. 2022); *Allstate Ins. Co. v. Plambeck,* 66 F. Supp. 3d 782, 786 (N.D. Tex. 2014); *see also Cox v. Waste Mgmt. of Texas, Inc.*, 2013 WL 690849, at *2 (S.D. Tex. 2013); *Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 805 (E.D. Tex. 2012), *aff'd sub nom. Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir. 2013). Drew does not challenge the reasonability or necessity of the videography costs; instead simply

8

claims that McGriff "offers inapplicable support for its [request]." (Doc. No. 48 at 2). Thus, the Court finds the videography costs to be justified and awardable.

Finally, based on the facts and nature of this case, the Court does not find it appropriate to exercise its equitable discretion to deny the prevailing party costs of court. McGriff used the deposition testimony in its motion for summary judgment and avers that it would have used it at trial as well. As such, McGriff's request for a Bill of Costs is **GRANTED**.

## IV. Conclusion

Having considered the briefing and applicable law, the Court hereby **DENIES** Drew's Motion for Reconsideration, (Doc. No. 47), and **GRANTS** McGriff's Motion for Bill of Costs. (Doc. No. 46).

Signed this ___11___ day of March, 2025.

Andrew S. Hanen
United States District Judge